·The Greenwich Bank, Respondent, *v.* Hartford Fire Insurance Company of Hartford, Connecticut, Appellant, and The Hempstead Plains Company et al., Respondents.

(Argued December 3, 1928; decided December 31, 1928.)

*Frederick T. Case* and *Francis X. Hanley* for appellant. The policy required the giving of immediate notice of loss. The trial court found as a fact that the insurance companies did not receive immediate notice of loss. The breach of this condition precedent defeats a recovery. (*Brown* v. *London Assurance,* 40 Hun, 101; *Quinlan* v. *Providence Washington Ins. Co.,* 133 N. Y. 356; *Inman* v. *Western Fire Ins. Co.,* 12 Wend. 452; *Carpenter* v. *German American Ins. Co.,* 52 Hun, 249; *Railway Passenger Assurance Co.* v. *Burwell,* 44 Ind. 460; *Trask* v. *State F. & M. Ins. Co.,* 29 Penn. St. 198; *Cook* v. *No. British & M. Ins. Co.,* 181 Mass. 101; *Burnham* v. *Royal Ins. Co.,* 75 Mo. App. 394; *Roumage* v. *Ins. Co.,* 13 N. J. L. 110; *Edwards* v. *Ins. Co.,* 75 Penn. St. 378; *Weed* v. *Hamburg Bremen Ins. Co.,* 133 N. Y. 394; *Brown* v. *London Assn.,* 40 Hun, 101; *Ermentrout* v. *Girard Ins. Co.,* 63 Minn. 305.) The policy provided that any change in the interest, title or possession of the assured rendered void the insurance. There was such a change and the policy was rendered void. (*Bronson* v. *N. Y. Fire Ins. Co.,* 64 W. Va. 494; *Bowling* v. *Continental Ins. Co.,* 86 W. Va. 164; *Matter*

*of Hamilton*, 102 Fed. Rep. 683; *Rand* v. *Iowa Central Ry. Co.*, 186 N. Y. 58; *Nicoll* v. *Sands*, 131 N. Y. 19; *Woolsey* v. *Funke*, 121 N. Y. 87; *Phetteplace* v. *British & Foreign Ins. Co.*, 23 R. I. 26.) The evidence shows that the defendant Hempstead Plains Company had no interest in the insurance or in the mortgaged property. The trial court could not possibly have directed a verdict in its favor. (*Lett* v. *Guardian Ins. Co.*, 52 Hun, 570; 125 N. Y. 82; *Attleborough Savings Bank* v. *Security Ins. Co.*, 168 Mass. 147; *Missouri Pac. Ry.* v. *International Marine Ins. Co.*, 84 Tex. 149; *Packham* v. *German Fire Ins. Co.*, 91 Md. 515; *Sims* v. *Mut. Fire Ins. Co.*, 101 Wis. 586.)

*Frank C. Laughlin, Thomas G. Frost* and *Joseph W. Kirkpatrick* for plaintiff, respondent. The provisions of the policies, that the insured shall give immediate notice in writing of any loss or damage, require only that the notice must be given within a reasonable time and the facts being undisputed that presented only a question of law which the Appellate Division properly decided in favor of the plaintiff. (*Carpenter* v. *German-American Ins. Co.*, 52 Hun, 249; *Coventry Mutual Stock Ins. Co.* v. *Evans*, 102 Penn. St. 281; *Southern Idaho Assn.* v. *Hartford Fire Ins. Co.*, 31 Idaho, 130; *Watson* v. *Ocean A. & G. Corp.*, 238 Pac. Rep. 338; *Home Life & Accident Co.* v. *Beckner*, 168 Ark. 283; *Shaneberg* v. *Nat. Accident Society*, 263 S. W. Rep. 512; *Taber* v. *Royal Ins. Co.*, 124 Ala. 681; *Insurance Co.* v. *Owens*, 69 Kan. 602; *Insurance Co.* v. *Whitaker*, 112 Tenn. 151; *Southern Fire Ins. Co.* v. *Knight*, 111 Ga. 622; *Connecticut Fire Ins. Co.* v. *Colorado L. & M. Co.*, 50 Colo. 424.) The appointment of a receiver in bankruptcy of the estate of the insured prior to the fire loss, did not effect such a change in the interest, title or possession of the property as to render the policy void. (*Keeney* v. *Home Ins. Co.*, 71 N. Y. 396; *Fuller* v. *Jameson*, 98 App. Div. 53; 184 N. Y. 605; *Bowling* v. *Cont. Ins. Co.*, 86 W. Va. 164; *Walradt* v. *Phœnix Ins. Co.*, 136 N. Y. 375; *Gordon* v. *Mechanics &*

*Traders' Ins. Co.*, 120 La. Ann. 441; *Fuller* v. *New York Fire Ins. Co.*, 184 Mass. 12; *Georgia Ins. Co.* v. *Bartlett*, 91 Va. 305; *Budelman* v. *American Ins. Co.*, 297 Ill. 222; *Marcello* v. *Concordia Ins. Co.*, 234 Penn. St. 31; *Thompson* v. *Phœnix Ins. Co.*, 136 U. S. 287; *Southern Pants Co.* v. *Rochester German Ins. Co.*, 159 N. C. 78; *Smith* v. *Security M. F. Ins. Co.*, 29 S. Dak. 328; *Rumsey* v. *Phœnix Ins. Co.*, 1 Fed. Rep. 396.) The trial court erred in directing a verdict in appellant's favor, in view of the fact that insured's policies were " for account of whom it may concern and /or as interest may appear," and made payable to " The Hempstead Plains Company, The Greenwich Bank and The New Netherland Bank of New York as their respective interests may appear," and in view of the fact that with respect to five of the policies, there were mortgagee clauses attached in favor of the Hempstead Plains Company. (*McDowell* v. *St. Paul F. & M. Ins. Co.*, 207 N. Y. 482; *Heilbrunn* v. *German Alliance Ins. Co.*, 140 App. Div. 557; 202 N. Y. 610; *Bertolami* v. *United Engineering & C. Co.*, 198 N. Y. 71; *Cary* v. *White*, 59 N. Y. 336; *People ex rel. Warchauer* v. *Dalton*, 159 N. Y. 235; *Bulkley* v. *Kaolin Products Co., Inc.*, 187 App. Div. 103; *Union Inst. for Savings* v. *Phœnix Ins. Co.*, 196 Mass. 230; *Canton Co-op. Bank* v. *Amer. Central Ins. Co.*, 219 Mass. 132.)

*George E. Netter* and *Henry C. Burnstine* for respondent. Notice of loss was immediate in the circumstances and the Appellate Division correctly held that the trial court erred in holding as matter of law that the respondents could not recover for failure to give immediate notice. (*Solomon* v. *Continental Fire Ins. Co.*, 160 N. Y. 595; *Weed* v. *H. B. F. Ins. Co.*, 133 N. Y. 394; *O'Brien* v. *Phœnix Ins. Co.*, 76 N. Y. 459; *Carpenter* v. *G. A. Ins. Co.*, 135 N. Y. 298; *Matthews* v. *Amer. Central Ins. Co.*, 154 N. Y. 449; *Solomon* v. *Continental Fire Ins. Co.*, 160 N. Y. 595; *Will & Baumer* v. *Rochester German Ins.*

Co., 140 App. Div. 691; *Glazer* v. *Home Ins. Co.*, 190 N. Y. 6; *Paltrovitch* v. *P. Ins. Co.*, 143 N. Y. 73; *Edwards* v. *Lycoming County M. Ins. Co.*, 75 Penn. St. 378.) Respondents other than the trustee in bankruptcy are not affected by any neglect or delay in giving notice of loss and may recover notwithstanding any such delay. (*Bonfoey* v. *U. S.*, 252 Fed. Rep. 802; *McClelland* v. *Remsen*, 3 Keyes, 454; 14 Abb. Pr. 331; *Leitch* v. *Hollister*, 4 N. Y. 211; *Scandinavian Am. Bank* v. *Sabin*, 227 Fed. Rep. 579; *McDowell* v. *St. Paul F. & M. Ins. Co.*, 207 N. Y. 482; *Heilbrun* v. *German Alliance Ins. Co.*, 140 App. Div. 557; 202 N. Y. 610; *Lewis* v. *Guardian Ins. Co.*, 93 App. Div. 157; *Moore* v. *Hanover Fire Ins. Co.*, 141 N. Y. 219; *Rosenstein* v. *Traders' Ins. Co.*, 79 App. Div. 481; *East-Side Garage* v. *New Brunswick Fire Ins. Co.*, 198 App. Div. 408; *Williams* v. *Pioneer Co-operative Fire Ins. Co.*, 183 App. Div. 826.)   There was no such change of interest, title or possession as would void the policy. (*Bowling* v. *Continental Fire Ins. Co.*, 86 W. Va. 164; *Walradt* v. *Phœnix Ins. Co.*, 136 N. Y. 377; *Keeney* v. *Home Ins. Co.*, 71 N. Y. 396; *Marcello* v. *Concordia F. Ins. Co.*, 234 Penn. St. 31; *Thompson* v. *Phenix Ins. Co.*, 136 U. S. 287; *Georgia Home Ins. Co.* v. *Bartlett*, 91 Va. 305; *Southern Pants Co.* v. *Rochester German Ins. Co.*, 159 N. C. 78; *Ætna Ins. Co.* v. *Aston*, 123 Va. 327; *Lancashire Ins. Co.* v. *Boardman*, 58 Kans. 339; *Gordon* v. *Insurance Co.*, 120 La. Ann. 442.)

CRANE, J.   The Alexandre Works, Inc., a domestic corporation, was engaged in business on Stewart ave., Garden City, Long Island, New York, as dealer in and manufacturer of fur novelties.   Its plant consisted of a number of brick buildings containing machinery and personal property of considerable value.   The insurance amounted to $369,000.   On January 9, 1922, it went into bankruptcy, and Percival Wilds on that day was appointed receiver, going into possession on January 14, 1922.   The

insurance was reduced to $293,500, covered by thirty-nine policies in various companies. On January 29, 1922, a fire occurred, causing slight damage, and on February 17, 1922, another fire occurred, resulting in total loss. Thirty of the policies, amounting to $240,500 insurance, had been transferred to the name of the receiver. The proportionate part of the loss due under these policies has been paid. The remaining nine policies are in litigation in this action; they were not transferred into the name of the receiver. Payment has been resisted under two main contentions: one, that immediate notice of loss was not given to the companies; the other, that possession had been transferred out of the insured into the receiver, contrary to the terms of the policy.

The nine policies insured the Alexandre Works, Inc.:

" Loss, if any, payable to The Hempstead Plains Company, The Greenwich Bank, and the New Netherland Bank of New York as their respective interests may appear."

The Hempstead Plains Company was a mortgagee under two mortgages covering the property of the Alexandre Works, Inc., and five of the policies contained a mortgagee clause. The Greenwich Bank and the New Netherland Bank of New York did not have a mortgage. " They owned some of the merchandise; it was given on trust receipts." The claims of the banks and of the mortgagee, the Hempstead Plains Company, are the ones which are involved in this lawsuit, although the trustee in bankruptcy is a party representing the Alexandre Works, Inc.

In reviewing the defenses made by the insurance company, I shall deal with the questions in the following order: *first,* the rights of the mortgagee; *second,* the transfer of possession to the receiver; and *third,* the notice of loss given to the companies.

The Hempstead Plains Company, as to five of these policies, was a mortgagee, protected by a mortgage

clause in the policies. This clause does not appear in the record. Only one policy is given in full (plaintiff's Exhibit 10), which does not contain this clause. The other exhibits are abbreviated, five of the statements reading: " Same assured, payable to same companies as appears in Plaintiff's Exhibit No. 10 (mortgagee clause with respect to Hempstead Plains Co. attached)." The brief for the insurance companies refers to this clause as the " extended standard mortgagee clause," and says that it gave the Hempstead Plains Company a separate contractual right, not affected by any act or neglect of the mortgagor or owner. If this mortgagee clause has become standardized, the provisions of subdivision 3, section 121 of the Insurance Law (Cons. Laws, ch. 28), must have been complied with. We may fairly assume, therefore, that the copy of the clause contained in one of the other briefs is accurate. The following are its provisions:

" Loss or damage, if any, under this policy, shall be payable to Hempstead Plains Co. as first mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; PROVIDED, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same."

This is all that need be quoted for the purposes of this opinion.

Under this clause, therefore, as to these five policies, the appointment of the receiver and the transfer of possession to him or the failure of the insured to give

immediate notice of loss would furnish no defense to the companies as against the Hempstead Plains Company. (*Heilbrunn* v. *German Alliance Ins. Co.*, 140 App. Div. 557; affd., 202 N. Y. 610.)

In this connection, however, another question has arisen. All the policies contained the subrogation clause. It reads:

" On payment to such mortgagee of any sum for loss or damage hereunder, if this Company shall claim that as to the mortgagor or owner, no liability existed, it shall, to the extent of such payment be subrogated to the mortgagee's right of recovery and claim upon the collateral to the mortgage debt, but without impairing the mortgagee's right to sue or it may pay the mortgage debt and require an assignment thereof and of the mortgage."

The only benefit of this clause to the companies is in case they are liable to the mortgagee, but not liable to the insured; that they have a defense against the insured which for some reason, possibly the mortgagee clause, is not good as against the mortgagee. In this case, as I shall show later, the companies have no defense, as against the insured, for the reason that there was no transfer of possession within the meaning of the policy, and that the notice of loss was given in time.

As to these five policies, therefore, the insurance companies were liable to the Hempstead Plains Company under the mortgagee clause. Judgment should have been directed in its favor.

The Greenwich Bank and the New Netherland Bank of New York were not mortgagees, and did not come within the benefit of this mortgagee clause, as to these five policies. They held trust receipts, the nature of which is not stated in the record. They had some right of property in the merchandise. Apparently the Alexandre Works, Inc., held the merchandise, the title remaining in the banks. As between the banks and the

company, this may have been in the nature of a conditional sale or a chattel mortgage. (*Matter of A. E. Fountain, Inc.*, 282 Fed. Rep. 816.) Under the terms of the policies of insurance, however, the banks were not mortgagees; the policies refer to those who are mortgagees in fact, and not by mere construction of law. *McDowell* v. *St. Paul F. & M. Ins. Co.* (207 N. Y. 482) dealt with a mortgagor and the mortgagee, and a clause which made the loss payable to John McDowell, as mortgagee; the policy so stated; this was the contract. In the nine policies in this case, the banks are not referred to as mortgagees, and in the evidence it appears that they are not mortgagees. The Greenwich Bank and the New Netherland Bank of New York, therefore, under these policies, stood in no better position than the insured. (*Moore* v. *Hanover Fire Ins. Co.*, 141 N. Y. 219.) Whatever rights they have, they must derive by and through it. The Hempstead Plains Company, as to the four policies which did not have annexed the " standard form extended mortgagee clause " is probably in a better position than the banks, because it does appear from the evidence to be a mortgagee in fact, and, therefore, comes within that provision of the policy headed, " Mortgage Interests." This is not a standard mortgagee clause, but is a part of the policy itself. A similar provision was construed by us in the *McDowell* case, and no doubt that case is applicable to the Hempstead Plains Company, in so far as the facts here support the application. I will not, however, pause to deal with this distinction, but treat the rights of the banks under the nine policies, and the rights of the Hempstead Plains Company under the four policies as though they were the same.

Was there a transfer of possession by the appointment of the receiver within the meaning of the policies? The policies provided: " This entire policy shall be void, * * * (d) if any change, other than by the death of an insured, take place in the interest, title or possession

of the subject of insurance (except change of occupants without increase of hazard)." The insurance companies insist that the appointment of the receiver in bankruptcy a month and a half before the fire, made void this policy. We are not dealing with title, but with this clause regarding possession. Title to the property passed to the trustee in bankruptcy after the fire, March 24, 1922. The question now is solely one of possession. The word " possession " has various meanings. We speak of one having title to property as possessing such property; it may also have a very broad meaning when applicable to tax litigation. ( *U. S.* v. *Whitridge,* 231 U. S. 144.) Here it is used in a contract, and the question is what meaning have the parties given to it; what is the possession, the transfer of which voids the contract? Occupancy is possession, and occupancy may take under its control an entire plant and all the buildings. Possession in this policy means something different than occupancy. Change in occupants does not invalidate the policy without an increase of hazard. Is the receiver an occupant within the meaning of this exception? By order of the court in bankruptcy proceedings, he is put into the possession of the property as a custodian to hold it for the benefit of all parties interested until a trustee is appointed or until otherwise disposed of. He is a custodian acting in behalf of the court, but takes no title. In this sense he is an occupant, and there is nothing here to show in this case that by reason of this occupancy or this possession, the risk was increased. This word " possession," therefore, must mean something more than entering the property and holding it as custodian, or entering it and retaining it as an occupant. What other possession can there be than the possession of one who occupies the premises physically by being on them, and being the only person on or in them? There is that possession which legally follows the title. Therefore, some of the cases which have passed upon

this clause in the insurance policies have held that possession means title. Whichever of these reasons is assigned, the cases are numerous which hold that the appointment of a receiver is not such possession as is transferred within the meaning of this clause in the policies. (*Keeney* v. *Home Ins. Co.*, 71 N. Y. 396; *Walradt* v. *Phœnix Ins. Co.*, 136 N. Y. 375; *Bowling* v. *Continental Ins. Co.*, 86 W. Va. 164; *Budelman* v. *American Ins. Co.*, 297 Ill. 222; *Marcello* v. *Concordia Fire Ins. Co.*, 234 Penn. St. 31; *Rumsey* v. *Phœnix Ins. Co.*, 1 Fed. Rep. 396; *Gordon* v. *Mechanics' & Traders' Ins. Co.*, 120 La. 441; *Fuller* v. *New York Fire Ins. Co.*, 184 Mass. 12; *Georgia Ins. Co.* v. *Bartlett*, 91 Vir. 305; *Thompson* v. *Phenix Ins. Co.*, 136 U. S. 287; *Southern Pants Co.* v. *Rochester German Ins. Co.*, 159 N. C. 78; *Lancashire Ins. Co.* v. *Boardman*, 58 Kan. 339.)

Some of these cases have held that the possession was not that of the receiver but the possession of the court, and that this was not a change of possession within the meaning of the policy.

That a receiver going into possession in bankruptcy proceedings may very materially increase the risk is not difficult to foresee. All work generally stops; the insured is apt to lose interest in his property and its upkeep; the vigilance which watches over a prosperous going concern is keener than that which is to preserve it merely for creditors. Many things may be suggested in favor of a ruling that the possession of a receiver is such a transfer of rights over property as to void a policy of insurance and in and of itself does increase the risk. If this were a new question presented for the first time, we might be more patient in listening to this plea of the insurance companies. The rule, to the contrary, however, has been deeply written into the law, and the companies continue to use the same phrase in their policies with this interpretation which has been given to it by the courts. It is too late now to construe these words

differently from the meaning given to them by the above authorities.

The trial court held that notice of loss was not given in time. As all the facts were conceded, and there were no different inferences to be drawn from them, his ruling was clearly one of law, as his opinion indicates. The Appellate Division reversed and sent the case back for a new trial, holding that the twelve days which elapsed between the fire and the notice of loss were not fatal as matter of law. The case comes here upon a stipulation for judgment absolute given by the insurance companies, so that if notice was given within reasonable time, as matter of law, the appellants must lose.

The fire causing the total loss occurred February 17, 1922. Notice of loss was given on March 1st to the insurance companies which had issued these nine policies. But this is not the whole story. The policies in standard form contained this clause:

" Requirements in case of loss.— The insured shall give immediate notice in writing, to this Company, of any loss or damage, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory," etc.

These requirements are not included within the provisions which are said to make the policy void unless complied with. We may assume that whatever penalty follows from failure to meet these requirements is applicable alike to each and every one of them. Unless immediate notice is given, it is said that the policy is void. Does this also follow if the property is not protected from further damage, or separated from the undamaged property, or not put in the best possible order? And if not, why not? The penalty which follows from the failure to comply with any of these requirements is stated at the end of the policy: " No suit or action on this policy, for the recovery of any claim, shall be

sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with." Some courts have held, under policies different in form, that the requirement to give immediate notice does not void the policy, but delays action or payment until such notice is given. (*Dixon* v. *State Mutual Ins. Co.*, 34 Okla. 624; *Mason* v. *St. Paul Fire & Marine Ins. Co.*, 82 Minn. 336; *Kahnweiler* v. *Phœnix Ins. Co.*, 57 Fed. Rep. 562; *Hirsch-Fauth Furniture Co.* v. *Continental Ins. Co.*, 24 Fed. Rep. [2d] 216; Joyce on Insurance, vol. 5, p. 5483.) In this State, however, we have held that notice of loss must be given within a reasonable time, and that if there be no question on the facts, reasonable time is a question of law for the court. (*Solomon* v. *Continental Fire Ins. Co.*, 160 N. Y. 595; *Bennett* v. *Lycoming Mutual Ins. Co.*, 67 N. Y. 274; *Matthews* v. *American Cent. Ins. Co.*, 154 N. Y. 449; *Carpenter* v. *German American Ins. Co.*, 135 N. Y. 298.) The notice of loss in this case under all the circumstances, as I shall explain them, was given within a reasonable time.

The Alexandre Works, Inc., as above stated, had reduced its insurance to $293,500 represented by 39 separate and distinct policies of insurance. The insurance had been covered and the policies obtained by Joseph Bookstaver, an insurance broker doing a general insurance business. The actual work in connection with this insurance was handled by Elias Klein, an employee of Bookstaver's. Before the fires, Klein had been instructed by Mr. Geist, one of the officers of the Alexandre Works, Inc., to effect some change in the interest of a mortgagee on one of the policies, and later undertook to transfer all the policies into the name of the receiver. He collected all the policies, going to Garden City for some and to " different sources " for the others. Before the fire, he had all the thirty-nine policies. Thirty of them had been transferred into the name of the receiver.

The nine here in question were still in force, had never been canceled, but had not been changed into the name of the receiver. The receiver did not know what insurance there was upon the property. Klein had all the policies. When the fire occurred, adjusters were appointed, as is customary, to settle the loss and to collect under the policies. The adjuster selected by Percival Wilds, the receiver, was Lyons, Stadholz & Co., to whom Klein was asked to turn over all the policies. This he attempted to do, after the first fire of January 29. The loss at this fire was very slight. Notice of loss was sent by this adjuster or its representative, Albert M. Isaacs, to all the companies represented by the policies turned over by Klein. When the fire of February 17 occurred, there was a total loss. The adjuster for the receiver had the policies, and he gave notice to the companies of the loss. When it came to making up the inventories of this loss, it was necessary to consult the general manager of the Alexandre Works, Inc. For the first time it was then discovered that nine policies were missing. The manager discovered the fact and told the adjuster. Klein had failed to turn over the nine policies here in question. He had been instructed by the receiver, after the first fire, to turn over all policies which he had collected, and which he had in his possession, to the adjuster for the receiver. He failed to turn over these nine policies. As soon as the adjuster learned this, he gave immediate notice of loss to the companies issuing these policies, and this within twelve days after the fire. The notice was given to these nine companies on March 1, 1922. After the first fire, as well as after the second fire, the companies under the thirty policies appointed representatives of the General Adjustment Bureau as adjusters. These same adjusters represented the companies under these nine policies, on which notice of loss was not given until

March 1. Klein had failed to turn over these nine policies, as he was told to do by the receiver, because thirty of them had been transferred to the name of the receiver, and these nine had not been so transferred. He " assumed that those particular companies would not be liable for the particular loss." He concluded that the total amount of insurance was only $240,500 instead of $293,500. Here was a clear mistake of fact, and an assumption of authority which he did not possess. (*Commercial Travelers Ins. Co.* v. *McAdam*, 125 Fed. Rep. 358; *Melcher* v. *Ocean Accident Guarantee Corp.*, 226 N. Y. 51.) Klein had been instructed to turn over all policies — a clerical act; he kept out these nine under the mistaken belief that they did not cover the loss. It is conceded that as soon as knowledge of this additional insurance was discovered by the receiver and his adjuster, immediate notice of loss was given to the companies. Here we have a delay of twelve days in giving notice of loss, due to the mistake of a clerk. Thirty-nine policies were to be turned over to an adjuster; the clerk had them all in his possession and turned over thirty under some notion of his that nine did not apply. Neither the adjuster nor the receiver knew anything about these nine policies. As soon as their existence was discovered, immediate notice was given to the companies, as required by the policies. All this happened within a period of twelve days after the fire. The position of no one was changed in the meantime. The adjusters of the thirty companies, who were also the adjusters of these nine companies, knew of the fire of the seventeenth, and of the total loss.

What reason is there for placing a narrow and strict construction upon the words, " immediate notice of loss? " When we consider that this is not made one of the conditions which voids the policy, but is linked up to those provisions relating to requirements after the loss, we should give this policy a reasonable interpretation,

and a fairly liberal construction. Such is the law. A liberal construction always obtains with reference to the procedure after loss. (*McNally* v. *P. Ins. Co.*, 137 N. Y. 389, p. 398; *Paltrovitch* v. *P. Ins. Co.*, 143 N. Y. 73, 77; *Sergent* v. *Liverpool & L. Globe Ins. Co.*, 155 N. Y. 349; *Glazer* v. *Home Ins. Co.*, 190 N. Y. 6, 11; *Matthews* v. *American Central Ins. Co.*, 154 N. Y. 449, 457.)

The fire occurred; there is no fraud; the loss has been sustained; the policies covered the loss, and this point relates to those things which must be done by the insured in connection with the remedy. He must give immediate notice of the loss, which we have held repeatedly means notice within a reasonable time. Notice given as soon as the receiver or his representative knew of the existence of the policies, which a clerk had concealed, and within twelve days after the fire, is given within a reasonable time.

The rule has been repeatedly stated that a reasonable time, when the facts are undisputed and different inferences cannot reasonably be drawn from the facts, is a question of law. (*Wright* v. *Bank of Metropolis*, 110 N. Y. 237, 249; *Travelers Ins. Co.* v. *Pomerantz*, 246 N. Y. 63; *Bennett* v. *Lycoming Mut. Ins. Co.*, *supra*.) This is one of those general rules, however, which is some times difficult of application, and results in the question being left to a jury when it is near the border line. (*Carpenter* v. *German American Ins. Co.*, 135 N. Y. 298, 303.)

There are one or two other points raised by the insurance companies, but we need not discuss them, as in our judgment they have been rightly disposed of.

The order should be affirmed and judgment absolute ordered against the appellant on the stipulation, with costs in all courts.

CARDOZO, Ch. J., POUND, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Order affirmed, etc.