■ JOHN VRADENBURG, SR., et al., Respondents, v PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Appellant. [622 NYS2d 623] —Casey, J. Appeal from an order of the Supreme Court (Dier, J.), entered January 10, 1994 in Warren County, which, *inter alia,* granted plaintiffs' motion for summary judgment and made a declaration in their favor.

Noncompliance with the notice provision of an insurance policy will vitiate the contract regardless of whether the insurer suffered any prejudice as a result of the delay, but the insured's delay in giving notice may be excused when it is based upon a good-faith belief in nonliability, provided that the belief is reasonable under the circumstances *(see, Security Mut. Ins. Co. v Acker-Fitzsimons Corp.,* 31 NY2d 436, 440-441). At issue on this appeal is whether Supreme Court correctly held that as a matter of law plaintiffs' delay in giving defendant notice should be excused. We agree with Supreme Court's holding and, therefore, the order should be affirmed.

Plaintiffs, father and son, were insureds under a homeowners policy issued by defendant which was in effect when a friend of the son was injured in the home owned by the father. The facts surrounding the injury are undisputed. The son and two friends, all teenagers, skipped school, obtained some beer and went to plaintiffs' home while the father and his wife were at work. While drinking the beer and watching television, one of the friends became interested in the father's gun collection. The son took one of the guns, which was loaded with the safety on, out of the unlocked gun cabinet and showed it to his friends, but refused to let them handle the gun and returned it to the cabinet. Sometime thereafter, the son fell asleep on the couch. One of the friends took one or more of the father's guns, and while handling one of them he accidentally shot the other friend in the arm.

The injured friend was taken to the hospital where he

remained for several days. The son accompanied his injured friend to the hospital and thereafter was questioned at the police station. After learning of the incident, the father also went to the police station where he picked up his son. No criminal charges were filed against either the father or the son. The friend who handled the guns, however, was charged with reckless endangerment in the first degree and spent several months in jail. More than three years after the incident, plaintiffs were served with a summons and complaint in an action by the injured friend. They promptly notified defendant, and defendant subsequently issued a disclaimer based upon late notice and upon a policy exclusion no longer at issue. Plaintiffs commenced this declaratory judgment action to determine whether defendant is obligated to defend and indemnify plaintiffs in the personal injury action.

The issue is not whether plaintiffs should have anticipated the possibility of a lawsuit. If that issue was the focus of the inquiry, an insured's delay would rarely be excused. In today's litigious society, it seems that a lawsuit is reasonably foreseeable whenever an injury occurs, and property owners are routinely brought into civil actions even though their only connection with an injury is their misfortune of owning the property where the injury occurred (see, e.g., Jarvis v Eastman, 202 AD2d 826; O'Britis v Peninsula Golf Course, 143 AD2d 123; Gordon v Harris, 86 AD2d 948). The proper focus of the inquiry in a case such as this is on the insured's good-faith belief in nonliability (see, e.g., Briggs v Nationwide Mut. Ins. Co., 176 AD2d 1113), not whether the insured should have anticipated the lawsuit. Thus, the fact that the injured party voiced the intent not to sue anyone will not excuse the insured's delay when the facts and circumstances surrounding the happening of the injury are such that a reasonable person could envision liability (see, e.g., E.B. Gen. Contr. v Nationwide Ins. Co., 189 AD2d 796). In Beach Haven Apts., No. 6 v Allcity Ins. Co. (182 AD2d 658, 659-660, lv denied 80 NY2d 761), the Second Department excused an insured property owner's delay in giving notice, relying in part upon the relative rarity of lawsuits against property owners arising out of criminal acts of third-parties. For the reasons previously set forth, we are of the view that the mere number or frequency of lawsuits in similar circumstances is not relevant, but the existence of lawsuits in which a property owner was actually found to be liable in similar circumstances may be relevant in determining whether a reasonable person could envision liability.

We conclude that in the undisputed facts and circumstances

of this case, plaintiffs had, as a matter of law, a reasonable good-faith belief in nonliability. The injury was caused by the reckless conduct of another person, who was the only person charged with criminal responsibility for the incident after a police investigation. Neither of the plaintiffs participated in, permitted or condoned the reckless conduct. The father was not home at the time of the shooting, did not know that his son and two friends would be there, and did not authorize or expect their presence in the home when they should have been in school. Although the son showed a gun to his friends, he expressly refused to let them handle it and believed that his friends understood the guns were not to be touched. The son was asleep when the gun was removed from the cabinet by his friend and was unaware that the gun was being handled until he was awakened by the sound of a gunshot.

If the father had left the loaded gun out for display where people would be expected to pick it up and handle it, the potential for liability would be apparent (see, Gerbino v Greenhut-Siegel-Cooper Co., 165 App Div 763), as it would be if the father had entrusted his son with a dangerous instrument (see, Nolechek v Gesuale, 46 NY2d 332, 338). The father's conduct in this case, however, is such that his liability is questionable at best (see, Brahm v Hatch, 203 AD2d 640, 641-642). We are of the view that a reasonable person in the father's position, with no training or experience in tort litigation, could have a good-faith belief of nonliability for an injury which occurred on his property but was caused by the reckless conduct of another person whose presence was neither authorized nor expected and who was the only person charged with criminal responsibility for the incident. Considering his age and experience, we reach the same conclusion as to the son. Had the son permitted the gun to be handled without proper precaution, the potential for liability would be apparent (see, Gill v Falkowski, 69 AD2d 934). Here, however, it is undisputed that the friend took the gun without permission and that the son did not know the friend was handling the gun until after the gun had fired.

Assuming that plaintiffs can be found to have breached a duty owed to the injured party which was a proximate cause of the injury, it is not reasonable to expect them to have understood, at the time of the injury, the nuances of tort law which might allow civil liability to be imposed upon them despite the independent injury-causing conduct of a third-party who was charged with criminal responsibility for the incident. Based upon all of the relevant facts and circum-

stances, which are undisputed, we conclude that plaintiffs were properly granted summary judgment.

Mikoll, J. P., Crew III, White and Peters, JJ., concur. Ordered that the order is affirmed, with one bill of costs.