[696 NYS2d 563]

Reynolds Metal Company, Appellant, v Aetna Casualty & Surety Company et al., Respondents.

Third Department, October 21, 1999

**APPEARANCES OF COUNSEL**

*Proskauer Rose, L. L. P.,* New York City (*Stephen Rackow Kaye* and *John H. Gross* of counsel), and *Anderson, Kill & Olick, P. C.,* for appellant.

*Felt, Evans, Panzone, Bobrow & Hallak, L. L. P.,* Clinton (*Bert W. Rein* of *Wiley, Rein & Fielding,* Washington, D.C., of counsel), for Aetna Casualty & Surety Company, respondent.

*Cozen & O'Connor,* New York City (*Peter M. Papasavas* of counsel), for American Home Assurance Company, respondent.

*O'Connor, O'Connor, Mayberger & First, P. C.,* Albany (*Dianne Bresee Mayberger* of counsel), for Continental Insurance Company and another, respondents.

*Zelle & Larson,* Waltham, Massachusetts (*William Gerald McElroy, Jr.,* of counsel), for Employers Insurance of Wausau, respondent.

*Saxer, Anderson, Wolinsky & Sunshine, P. C.,* Burlington, Vermont (*Gordon C. Gebauer* of counsel), for Federal Insurance Company, respondent.

*Melito & Adolfsen, P. C.,* New York City (*Louis G. Adolfsen* of counsel), for Hartford Accident and Indemnity Company and another, respondents.

*Hiscock & Barclay, L. L. P.,* Syracuse (*Alan R. Peterman* of counsel), for Home Insurance Company, respondent.

*O'Melveny & Myers,* New York City (*Rosemary E. Boller* of counsel), for Insurance Company of North America, respondent.

*Mendes & Mount,* New York City (*Mary Ann D'Amato* of counsel), for Certain Underwriters at Lloyd's, London & London Market Insurance Companies and another, respondents.

*Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P. C.,* Boston, Massachusetts (*Kim V. Marrkand* of counsel), and *Fischer, Bessette & Muldowney,* Malone, for Liberty Mutual Insurance Company, respondent.

*Tressler, Soderstrom, Maloney & Priess,* Newark, New Jersey (*Albert C. Hilber* of counsel), for Lumbermans' Mutual Casualty Company, respondent.

## OPINION OF THE COURT

CARDONA, P. J.

In May 1995, plaintiff, the operator of an aluminum reduction plant located in the Town of Massena, St. Lawrence County (hereinafter the Massena site), commenced this declaratory judgment action against defendants, the issuers of numerous primary and excess liability insurance contracts covering the period 1959 to 1986, seeking coverage for three "environmental actions" brought by the State Department of Environmental Conservation (hereinafter DEC), the Federal Environmental Protection Agency (hereinafter EPA) and the St. Regis Mohawk Tribe. The environmental actions involved contamination of groundwater, surface waters and soil at the Massena site (the DEC action), the sediments in the St. Lawrence River (the EPA action) and the natural resources owned by the St. Regis Mohawk Tribe, New York State and the United States—the natural resources damages or "NRD" action. Plaintiff seeks indemnification for $150 million in costs expended or to be expended to clean up portions of the Massena site and the sediments in the St. Lawrence River adjacent

to the Massena site. It also seeks a declaration that the issuers of primary liability insurance policies, defendants The Travelers Indemnity Company and Travelers Casualty and Surety Company (formerly known as The Aetna Casualty and Surety Company) (hereinafter collectively referred to as Travelers), the Insurance Company of North America (hereinafter INA) and Liberty Mutual Insurance Company, are obligated to pay defense costs.

Following discovery, defendants moved for summary judgment contending, *inter alia*, that plaintiff breached its contractual duties to its insurers by failing to provide timely notices of claims and occurrences. Supreme Court found that a December 6, 1983 letter sent to plaintiff by DEC constituted a "notice of claim" under the terms of the insurance policies in effect requiring notice be given to defendants "forthwith". Additionally, the court found that plaintiff had knowledge of events occurring prior to December 1986 from which it should have reasonably concluded that it was likely to incur remediation costs within its insurance coverage requiring it to provide notice by that time.[1] Supreme Court granted summary judgment in favor of defendants dismissing the complaint resulting in this appeal.

Initially, plaintiff contends that the December 6, 1983 "Potentially Responsible Party" or "PRP" letter it received from DEC did not constitute a claim within its insurance coverage. The letter provides, in pertinent part, as follows:

"Re: Reynolds Metals, Massena

"Sites: #645009A - Black Mud Lagoon

#645009B - Reynolds Metals Landfill

"Dear Sir or Madam:

"In accordance with the provisions of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ('CERCLA'), 42 U.S.C. § 9601 *et seq.*, the Department of Environmental Conservation has determined that you may be responsible for the release or threatened release of hazardous substances at the above-referenced site. As a potentially responsible party, you may be liable for the present and future costs of response, removal and remediation and for damages to the natural resources of the State of New York at and around the referenced site.

---

1. The typical notice of occurrence provisions provide, in pertinent part, as follows: "When an occurrence takes place written notice shall be given by or on behalf of the insured to the company * * * as soon as practicable."

"In view of the foregoing, this letter constitutes a claim by the State of New York pursuant to 42 U.S.C. § 9612 (a) for all costs, damages and claims recoverable now and in the future under federal and state law, including CERCLA. Unless, in a timely fashion, all investigative, removal and remedial work necessary at the site and its environs is performed and unless the State is reimbursed for all damages to its natural resources and for all past, present and future response, removal and re-mediation costs, this claim will not have been satisfied. In such event, the State of New York may hold you liable and subject to New York's claims under federal and state law through legal action."

Noting that its insurance policies excluded coverage for dam-ages to its own property, plaintiff argues that the December 1983 letter referred only to contamination of the six-acre lagoon and 11.5-acre landfill on its 1,600-acre Massena site and made no reference to damage to the St. Lawrence River or property of third parties. Therefore, it contends that the letter did not trigger its obligation under the policies to provide notice.

On the other hand, defendants point to language in the let-ter which they argue shows that it not only covered the landfill and the lagoon at the Massena site but also the St. Lawrence River by reference to "its environs" including "the natural re-sources of the State of New York at and around the referenced site". Defendants also contend that the language used asserted a claim by a third party, namely, the State: "this letter consti-tutes a claim * * * for all costs, damages and claims recover-able now and in the future under federal and state law" and "unless the State is reimbursed for all damages to its natural resources and for all past, present and future response, re-moval and remediation costs * * * the State of New York may hold you liable * * * through legal action".

Under New York law, compliance with the notice provisions of a liability insurance policy is a condition precedent to cover-age (see, American Home Assur. Co. v International Ins. Co., 90 NY2d 433, 442-443; Security Mut. Ins. Co. v Acker-Fitzsimons Corp., 31 NY2d 436, 440). Thus, " '[a]bsent a valid excuse, a failure to satisfy the notice requirement vitiates the policy * * * and the insurer need not show prejudice before it can as-sert the defense of noncompliance' " (American Home Assur. Co. v International Ins. Co., supra, at 440, quoting Security Mut. Ins. Co. v Acker-Fitzsimons Corp., supra, at 440). However, "an insured's good-faith belief in nonliability, when reasonable under the circumstances, may excuse a delay in

notifying an insurer of an occurrence or potential claim" (*Marinello v Dryden Mut. Ins. Co.*, 237 AD2d 795, 796; *see, D'Aloia v Travelers Ins. Co.*, 85 NY2d 825, 826; *Empire City Subway Co. v Greater N. Y. Mut. Ins. Co.*, 35 NY2d 8, 13; *Security Mut. Ins. Co. v Acker-Fitzsimons Corp.*, *supra*, at 441; *Vradenburg v Prudential Prop. & Cas. Ins. Co.*, 212 AD2d 913). The same holds true for a reasonably held belief of noncoverage (*see, Deso v London & Lancashire Indem. Co.*, 3 NY2d 127, 130-131 [discussing *Gluck v London & Lancashire Indem. Co.*, 2 AD2d 751, *affd* 2 NY2d 953]; *Sparacino v Pawtucket Mut. Ins. Co.*, 50 F3d 141, 143; *cf., Empire City Subway Co. v Greater N. Y. Mut. Ins. Co.*, *supra*, at 13-14).

Addressing noncoverage first, we note that in his deposition testimony, plaintiff's risk management manager, Bill Murphy, maintained that based upon his reading of the "owned property" exclusions[2] contained in plaintiff's insurance policies, he did not believe there was any insurance coverage for clean-up of any plant sites owned by plaintiff. The claims manual of Travelers and also the deposition testimony of their claims handlers lend support to that belief. Under this view, any potential damage to the State's natural resources, e.g., groundwater (*see*, Navigation Law § 172 [12], [18]), at and around the two waste disposal sites located at the Massena site and referenced in the December 1983 letter would not have been covered.

As for the good-faith belief in nonliability, the December 1983 letter did not identify the St. Lawrence River or any other third-party property as a possible contamination site. Additionally, in January 1984 DEC sent plaintiff notification that the Black Mud Pond and the lagoon waste disposal locations were classified a "3" on the EPA's ranking system for inactive waste sites. A "3" signified that action at the two sites might be deferred because they did not then present "a significant threat to public health or environment".

■ Whether plaintiff's belief of nonliability and noncoverage under the relevant circumstances was reasonable is ordinarily a question of fact (*see, Argentina v Otsego Mut. Fire Ins. Co.*, 86 NY2d 748, 750; *G.L.G. Contr. Corp. v Aetna Cas. & Sur. Co.*, 215 AD2d 821; *Kreger Truck Renting Co. v American Guar.*

---

2. Typically, such exclusions state:
   "This insurance does not apply: * * *
   "E. to property damage to
   "1. property owned, occupied or transported by the insured * * *
   "3. property used by the insured."

& *Liab. Ins. Co.*, 213 AD2d 453). In our view, plaintiff has tendered sufficient evidentiary facts to raise a material question as to whether it held a reasonable good-faith belief in noncoverage and nonliability excusing its failure to "immediately forward" the letter to defendants.[3]

Defendants also argue that Supreme Court properly precluded plaintiff from raising its reasonable belief in nonliability or noncoverage as a defense for noncompliance with the late notice of claim provisions contained in its policies. Relying on the rationale of *American Ins. Co. v Fairchild Indus.* (56 F3d 435), which noted that "[a]n assertion of possible liability, no matter how baseless, is * * * all that is needed to trigger a notice of claim provision" (*id.*, at 439), defendants contend that a defense grounded upon the reasonableness of a belief of nonliability or noncoverage is only permitted in cases involving late notices of occurrence but not late notices of claim. We disagree and note that there is no New York case which specifically upholds such a distinction. In *Empire City Subway Co. v Greater N. Y. Mut. Ins. Co.* (35 NY2d 8, *supra*), the defendant insurer alleged that the plaintiff, its insured, breached both a notice of occurrence provision and a notice of claim provision after a 16-month delay in notifying it of a third-party complaint. We find it significant that the Court considered the merits of the plaintiff's excuse instead of simply holding that any excuse for a failure to serve a notice of claim was irrelevant.

Moreover, despite the analysis in *American Ins. Co. v Fairchild Indus.* (*supra*, at 439-440) differentiating between the foci of a notice of occurrence provision versus a notice of claim provision, we perceive no reason why a failure to give a timely notice of claim should not be excused by an insured's good-faith belief in nonliability or noncoverage. It appears illogical that insureds should be required to promptly notify insurers of every claim no matter how remote the possibility of liability or coverage but be excused from doing so if a reasonable evaluation of an occurrence yields the same conclusion. Accordingly, we hold that plaintiff's "good-faith belief of nonliability * * * [or noncoverage] may excuse or explain [its] seeming failure to give timely notice of [the December 1983 claim] against it as long as the belief is reasonable under the circumstances" (*Town*

---

**3.** The typical notice of claim provisions provide, in pertinent part, as follows: "If a claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by it or its representative."

*of Smithtown v National Union Fire Ins. Co.*, 191 AD2d 426, 427).

Plaintiff also contends, and we agree, that Supreme Court erred when it concluded, as a matter of law, that plaintiff was required to give notice of an occurrence or occurrences no later than December 1986. Initially, we note "that plaintiff, as the nonmoving party, is entitled to the benefit of every favorable inference which can be drawn from the documents submitted on [its] behalf" (*Shay v Palombaro*, 229 AD2d 697, 700). Plaintiff contends through depositions and documentary evidence that it lacked knowledge in 1986 or in prior years of an occurrence giving rise to its possible liability within its insurance coverage so as to require it to give notice to defendant primary insurers no later than December 1986. Plaintiff's supporting proof shows that it was first notified in December 1982 that the lagoon and the landfill at the Massena site were being classified as possible hazardous waste disposal sites for inclusion in the State's Superfund program because of the possibility of groundwater contamination; however, no such contamination was confirmed at either site. Furthermore, plaintiff states that its own study at the time did not reveal surface or groundwater contamination from the lagoon.

As previously noted, the classification of the lagoon and the landfill by DEC as not posing significant threats to the public health or to the environment supported plaintiff's expressed belief that there had not been any release of contamination that threatened the property of any third party.[4] By 1985 plaintiff states that it needed to obtain a new DEC permit for the landfill and a permit to build a new lagoon, as the existing lagoon was reaching capacity. DEC would not issue the permits without plaintiff agreeing to a consent order which committed it to perform an environmental investigation of the Massena plant. Although earlier drafts of the consent order referred to the need for development of a remedial program and noted the presence of PCB contaminated sediments in the St. Lawrence River in the vicinity of the Massena plant, DEC dropped that language from the final consent order. Plaintiff states that at that time it was unaware of any PCB releases to the river caused by its operations and believed that any PCB contamination came from already confirmed sources at plants operated

4. Although in June 1986 DEC reclassified the lagoon a "2a" in its registry of inactive hazardous waste disposal sites, a temporary classification assigned to sites that have inadequate and/or insufficient data for inclusion in any other classification, no remedial action was required.

by its downstream and upstream neighbors, the General Motors Corporation and Alcoa. The consent order executed in September 1987 required an investigation of the entire plant site and development of a remediation program *if* any inactive hazardous waste sites were discovered. However, no remediation was specifically ordered and there was no requirement for an investigation of the river.

On or about September 10, 1987 DEC sent plaintiff another letter informing it for the first time that it was a potential responsible party for the contamination of the St. Lawrence-Grasse River System (hereinafter the September 1987 letter) and that it was nominating a portion of that river system for inclusion on the EPA's National Priorities List. Plaintiff sent a copy of the September 1987 letter to each of the primary insurers, Travelers, Liberty Mutual and INA, referring to it as a "potential claim" inasmuch as it made no demand that plaintiff pay anything. Subsequently, in January 1988, plaintiff furnished each of the primary insurers with a package of materials concerning the negotiations leading up to the September 1987 consent order and a close-to-final draft of it. Thereafter, in June and July 1988 all of the excess insurers were notified of the hazardous waste sites with potential exposure to plaintiff and that DEC was alleging that plaintiff was a potentially responsible party for contamination of the St. Lawrence-Grasse River System. Based upon the record before us, and considering that this is a motion for summary judgment, we find that plaintiff made a sufficient evidentiary showing to establish the existence of material triable issues of fact as to whether it had knowledge of on-site contamination causing third-party property damage that was subject to insurance coverage prior to the service of its notices to defendants in September 1987 and January 1988.

Furthermore, we do not agree with Supreme Court's grant of summary judgment to defendant excess insurers after finding that plaintiff's notices to those insurers in the summer of 1988 were, as a matter of law, untimely. As previously noted, the September 1987 consent order did not require remediation of any third-party property. Our examination of the record reveals no evidence that plaintiff had any actual estimates for clean-up costs prior to its service of the notices in the summer of 1988. Thus, defendant excess insurers failed to tender sufficient evidentiary facts demonstrating plaintiff's knowledge prior to the summer of 1988 that its primary policies would be exhausted implicating the excess insurance coverage (*see, American Home*

*Assur. Co. v International Ins. Co.*, 90 NY2d 433, 443, *supra*) and requiring notice to the excess insurers.

Next, we address plaintiff's contention that Supreme Court erred when it determined that plaintiff's May 18, 1995 notice to defendants of a potential NRD claim was untimely as a matter of law. It is undisputed that in May 1989, counsel for the St. Regis Mohawk Tribe wrote plaintiff, Alcoa and General Motors a letter giving notice that the St. Regis Mohawk Tribe "intends to file suit for damages to its rights and interest in and around the St. Lawrence River, including, but not limited to fish, wildlife, land, surface and ground waters, air and other natural resources caused by your companies' operation in Massena, New York".

Some five months later in October 1989, the New York Attorney General's office also sent plaintiff a "notice of intent to sue". These letters were received subsequent to plaintiff's discovery during the summer of 1988 of elevated levels of PCBs in St. Lawrence River sediments close to one of its outfalls, in one of its outfall ditches, and significant contamination at the Massena site, particularly in the North Yard. Also, in early October 1989, plaintiff received a unilateral administrative order by the EPA directing it and Alcoa to investigate and remediate PCB contamination in portions of the St. Lawrence River. We find that by October 1989 plaintiff possessed all the knowledge it needed to give defendants notice with respect to the NRD claims. We agree with Supreme Court that the fact that no natural resources lawsuit had been commenced[5] is irrelevant and presents no excuse for plaintiff's failure in 1989 to provide notice under the terms of its insurance policies. Accordingly, we find that plaintiff's unexcused delay in providing notice of the natural resources damages claims until May 1995 was untimely as a matter of law.

Finally, we find unpersuasive plaintiff's arguments urging rejection of defendants' late notice defense because they did not suffer any prejudice as a result of the timing of the notices of occurrences or claims. We note that "[n]oncompliance with

5. In January 1991, the St. Regis Mohawk Tribe, DEC and agencies of the United States Department of the Interior and the United States Department of Commerce, as trustees under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 USC § 9601 *et seq.; see,* 42 USC § 9607 [f]), signed a "Natural Resources Funding Agreement" with plaintiff, General Motors and Alcoa to develop a "Natural Resource Damage Assessment Plan". A covenant in that agreement precludes the trustees from asserting a claim for natural resource damages under Federal, State or Tribal law as long as the agreement remains in full force and effect.

the notice provision of an insurance policy will vitiate the contract *regardless of whether the insurer[s] suffered any prejudice as a result of the delay*" (*Vradenburg v Prudential Prop. & Cas. Ins. Co.*, 212 AD2d 913, *supra* [emphasis supplied]; *see, American Home Assur. Co. v International Ins. Co.*, 90 NY2d 433, 440, *supra*; *Security Mut. Ins. Co. v Acker-Fitzsimons Corp.*, 31 NY2d 436, 440, *supra*).

MERCURE, PETERS, SPAIN and CARPINELLO, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motions in their entirety; motion granted to the extent that defendants are awarded partial summary judgment dismissing all causes of action against them with respect to the natural resources damages claims and motions otherwise denied; and, as so modified, affirmed.