■ PREFERRED MUTUAL INSURANCE COMPANY, Appellant, v NEW YORK FIRE-SHIELD, INC., Defendant and Third-Party Plaintiff-Appellant. AVERSA AGENCY, INC., Third-Party Defendant-Respondent. [880 NYS2d 744]—

McCarthy, J. Appeals from an order and an amended order of the Supreme Court (Dowd, J.), entered June 2, 2008 and October 6, 2008 in Chenango County, which, among other things, denied plaintiff's motion for summary judgment declaring that it was entitled to disclaim coverage in the underlying action.

Defendant manufactures fire and flame retardant products, including a product known as "Inspecta-Shield." On October 28, 2004, two United States Marines were severely burned while wearing an item of camouflage clothing known as a "ghillie suit" in the course of a miliary exercise. The ghillie suits were

manufactured by a company known as Ghillie Suits.Com, Inc. and sold with a small bottle of fire retardant spray. As it turns out, the fire retardant spray included with the ghillie suits was actually Inspecta-Shield.

While defendant had no knowledge at the time of this accident that its product was being repackaged and sold by Ghillie Suits.Com, it learned of same the following month, in November 2004, when defendant became aware that two Marines had been severely burned while wearing ghillie suits that had been sold with Inspecta-Shield. Defendant did not, however, advise either its insurance agent (third-party defendant) or its general and excess liability insurance carrier (plaintiff) of this incident until nearly two years later when the two injured Marines commenced an action against it, among others, alleging strict liability (design defect and failure to warn), negligence and breach of implied warranty of fitness for a particular purpose.

Plaintiff disclaimed coverage based on defendant's failure to comply with the notice provisions of two insurance policies issued to it (a commercial general liability policy and an excess commercial general liability policy) and also commenced this action seeking a declaration that it was entitled to so disclaim. Defendant, in turn, commenced a third-party action against Aversa Agency, Inc., its insurance agent, alleging breach of contract, negligence and negligent misrepresentation. Thereafter, plaintiff moved for summary judgment claiming that defendant failed to give notice of an occurrence as soon as practicable such that it was not obligated to provide a defense or coverage to defendant. Aversa moved for dismissal of the third-party action claiming that it played no role in the late notice provided by defendant and, therefore, was not the cause of defendant's "lack of coverage." Defendant opposed both motions and cross-moved for partial summary judgment claiming that it gave notice within a reasonable time and as soon as practicable such that it was entitled to a defense and coverage.

In an amended order, Supreme Court granted defendant's cross motion, declared plaintiff's disclaimer of coverage invalid and dismissed the third-party complaint. Although plaintiff and defendant each filed a notice of appeal, only plaintiff pursues a modification of Supreme Court's amended order. Upon our review of the record, we find that the issue of whether defendant had a good faith belief in nonliability which excused its two-year delay in giving plaintiff notice cannot be decided as a matter of law in favor of either party. We therefore modify Supreme Court's amended order accordingly.

The notice provisions of the two insurance policies issued to

defendant by plaintiff are virtually identical and require defendant to notify plaintiff "as soon as practicable" of an occurrence "which *may* result in a claim" (emphasis added). Indeed, where notice is required under an insurance policy, the *insured* bears the burden of proving that there was a reasonable excuse for the delay in giving notice (*see Great Canal Realty Corp. v Seneca Ins. Co., Inc.*, 5 NY3d 742, 744 [2005]). To be sure, "an insured's good-faith belief in nonliability, when reasonable under the circumstances, may excuse a delay in notifying the insurer" (*Spa Steel Prods. Co. v Royal Ins.*, 282 AD2d 864, 865 [2001] [internal quotation marks and citation omitted]). The issue of whether an insured had a good faith belief in nonliability, and whether that belief was reasonable, ordinarily presents an issue of fact (*see id.* at 865; *Morehouse v Lagas*, 274 AD2d 791, 794 [2000]; *Reynolds Metal Co. v Aetna Cas. & Sur. Co.*, 259 AD2d 195, 200 [1999]). It is only when the facts are undisputed and not subject to conflicting inferences that an issue can be decided as a matter of law (*see Greenwich Bank v Hartford Fire Ins. Co.*, 250 NY 116, 131 [1928]). Here, not only is there room for disagreement on the inferences to be drawn from the facts (*see id.* at 131), any inference, at this procedural stage, must be drawn in favor of plaintiff (*see Reynolds Metal Co. v Aetna Cas. & Sur. Co.*, 259 AD2d at 202). Applying the foregoing precepts to this case, we find that, at least at this procedural stage in the litigation, an inference may be drawn that defendant was not only aware of the accident as of November 15, 2004, but also aware that Inspecta-Shield was being implicated in it.

The record reveals that defendant, through an employee, learned on November 12, 2004 that ghillie suits were being sold with a fire retardant spray referred to as " 'Inspecta-Shield' Class 'A' Fire Retardant." Specifically, on this date, defendant's employee documented a telephone call from an individual who advised her that Ghillie Suits.Com was selling an item known as a ghillie suit and "that the jacket *comes with* an 8 ounce bottle of [defendant's] product" (emphasis added). Notes from this conversation further indicate that the employee went to the Web site of Ghillie Suits.Com at which time she documented, "Sure enough *our product* was there (rebottled in black bottles with black and white label)" (emphasis added). On this date, again according to these notes, the employee gave the caller instructions on the recommended application of Inspecta-Shield on a ghillie suit. Indeed, the Web site, which this employee clearly viewed, warns that a ghillie suit is made of flammable material such that Ghillie Suits.Com "strongly" suggested that it be treated with "its" fire-proof spray if to be worn near sources of sparks, fire or other combustible materials. In our

view, it is possible to infer that, as of this day, defendant was aware that its product was not only being sold with ghillie suits, but also being applied to them to make them fire retardant.

Three days later, on November 15, 2004, this same employee learned from an investigator with the United States Department of Energy that two people were burned while wearing ghillie suits. The employee's notes from this day reveal that she recounted to this investigator her conversation from three days earlier and that she again provided recommended treatment methods for a ghillie suit. This same day, a second telephone conversation is documented by the employee. Notes from this conversation reveal that the original caller from three days earlier was in fact a United States Marine captain. It was then revealed to the employee that the two individuals who had been burned while wearing the ghillie suits were Marines. Specifically, the employee noted that the Marine captain "told [her] that two [M]arines had been severely injured when the[ir] suits caught on fire." Here again, a fair inference can be drawn from these notes that two individuals were burned and severely injured while wearing garments fire-retarded with defendant's product.

The record further confirms that defendant's president and chief executive officer became aware of Ghillie Suit.Com on November 12, 2004. He then personally spoke with the investigator from the Department of Energy on November 15, 2004 at which time he directly learned that two people were burned and injured while wearing ghillie suits. Defendant's president then agreed to assist in the Department of Energy's investigation into the flammability of ghillie suits by treating one with Inspecta-Shield and sending it to a laboratory. Significantly, by December 7, 2004, defendant was so certain that its product was being marketed and sold by Ghillie Suit.Com, its attorney issued a cease and desist notice to the company.

All of these facts, and the reasonable inferences that can be drawn from them, could lead a factfinder to conclude that defendant knew as of November 15, 2004 that two Marines were burned and severely injured while wearing garments treated with its flame-retardant product and that defendant's belief in nonliability was therefore not reasonable under the circumstances. While defendant's president maintains that he did not "believe" that Inspecta-Shield was involved in the accident or that a claim would be made against it, the reasonableness of his belief and his credibility on this critical point is best reserved for resolution by a jury (*see Morehouse v Lagas*, 274 AD2d at 794). In short, we find that Supreme Court erroneously decided

the question of reasonableness as a matter of law and "that this case should be governed by the general rule that the reasonableness of [defendant's] alleged good-faith belief of nonliability is a question of fact to be resolved by a jury" (*Marinello v Dryden Mut. Ins. Co.*, 237 AD2d 795, 798 [1997]).

As a final matter, we note that the relief requested by Aversa in its motion to dismiss the third-party complaint was expressly contingent on a finding by Supreme Court that defendant provided late notice.* No other legal ground or argument was advanced by Aversa in support of dismissal. Since the issue of notice cannot be determined as a matter of law in favor of either party at this juncture, we find that the third-party complaint should be reinstated.

Cardona, P.J., Mercure, Malone Jr. and Kavanagh, JJ., concur. Ordered that the order and amended order are modified, on the law, without costs, by reversing so much thereof as granted defendant's cross motion for partial summary judgment and as partially granted third-party defendant's motion for summary judgment; defendant's cross motion denied and third-party defendant's motion denied to said extent; and, as so modified, affirmed.

---

* Specifically, the attorney for the insurance agent asserts in its moving papers to Supreme Court that "[i]n the event this court rules that late notice was provided by [defendant] and that [plaintiff] owes no obligation to [defendant], then this court should dismiss the third-party complaint on the basis that any alleged misconduct by [Aversa] was not the cause of [defendant's] lack of coverage." In finding that Supreme Court erred in deciding the issue of the reasonableness of notice as a matter of law, it follows that there is now no basis to grant the limited relief requested by Aversa.