■ Donald H. Brahm et al., as Administrators of the Estate of Cheryl L. Brahm, Deceased, Appellants, v Viki L. Hatch, as Administratrix of the Estate of Robert Gates, Sr., Deceased, Respondent, et al., Defendants. (And Another Related Action.) [609 NYS2d 956] —Crew III, J. Appeal from that part of an order of the Supreme Court (Cobb, J.), entered April 14, 1993 in Columbia County, which granted defendant Viki L. Hatch's motion for summary judgment dismissing plaintiffs' complaints.

Defendant Wyley Gates (hereinafter Wyley) was charged in connection with the deaths of his father, Robert Gates, Sr. (hereinafter Gates); Gates' girlfriend, Cheryl L. Brahm; his brother, Robert Gates, Jr.; and his three-year-old cousin, Jason W. Gates (hereinafter Jason). Each of the victims was shot with Gates' Walther PPK .380 pistol on the evening of December 13, 1986.* The pistol, together with numerous other items, was taken from Gates' residence on December 4, 1986 by Wyley and two friends, Miles McDonald and defendant Damian Rossney. It appears from the record that Wyley engineered this mock burglary and that Rossney and McDonald divided the stolen items between them, with Rossney initially retaining the Walther pistol. Thereafter, on December 7, 1986, Wyley retrieved the pistol from Rossney along with a holster for the pistol and several clips of ammunition.

Plaintiffs, the respective administrators of the estates of Brahm and Jason, commenced these actions against, among others, defendant Viki L. Hatch, as the administratrix of Gates' estate, seeking to hold Gates liable for Brahm and

---

* Following a jury trial, Wyley was convicted of conspiracy in the second degree and sentenced to 8⅓ to 25 years' imprisonment; on appeal of that conviction, this Court affirmed *(see, People v Gates,* 153 AD2d 68, *lv denied* 75 NY2d 966).

Jason's deaths. Specifically, plaintiffs have alleged that Gates failed to restrain Wyley from vicious conduct and, further, negligently entrusted the pistol to him. Following joinder of issue, Hatch moved for summary judgment dismissing the complaints against her, and Supreme Court, *inter alia,* granted Hatch's motion. This appeal by plaintiffs followed.

We affirm. It is well settled that "[p]arental liability for the torts of a child does not arise merely from the parental relationship" *(Gordon v Harris,* 86 AD2d 948, 948-949; *see, Napiearlski v Pickering,* 278 App Div 456, 457; *Steinberg v Cauchois,* 249 App Div 518, 519). Insofar as is relevant to this appeal, such liability may arise, however, where the parent (1) fails to supervise a child with a known propensity toward vicious conduct or (2) entrusts a child with a dangerous instrument *(see, Gordon v Harris, supra,* at 949; *Steinberg v Cauchois, supra,* at 519). As to the first theory of recovery, it must be established both that the child had a tendency to engage in vicious conduct which might endanger a third party *and* that the child's parent(s) had knowledge of his or her propensities in this regard *(see, Staruck v County of Otsego,* 285 App Div 476, 478).

In our view, the record simply does not support plaintiffs' contention that Wyley engaged in vicious conduct prior to December 13, 1986 and/or that Gates knew of any such conduct. With respect to Wyley's apparent participation in the mock burglary, such conduct, although arguably illegal, is not in and of itself vicious. Moreover, even assuming that Wyley's conduct in this regard could be deemed vicious, there is absolutely no proof that Gates knew that Wyley was involved in this incident. Indeed, it is apparent from the record that Gates believed that strangers were responsible for the theft of, *inter alia,* the Walther pistol.

Further, even accepting as true plaintiffs' assertion that Wyley's conduct was the product of three generations of mental illness, there still is no indication in the record that Gates was aware of Wyley's alleged infirmity in this regard, nor is there any evidence that Wyley engaged in vicious conduct as the result of this alleged infirmity prior to December 13, 1986. Notably, although it appears that Wyley did undergo a psychiatric evaluation in preparation for his criminal trial, there is no suggestion in the record that Wyley underwent any form of mental health evaluation or counseling prior to December 13, 1986 or that he engaged in conduct prior to that date that would have revealed the need for such services.

Finally, we reject plaintiffs' assertion that certain statements made by Gates to his long-time friend, James Huvar, are sufficient to establish Wyley's propensity for vicious conduct. Huvar testified at an examination before trial that Gates indicated to him on at least two occasions that he would not be surprised if one day Wyley took a gun and shot whoever was around him. When asked if Gates revealed to him the factual basis for this belief, Huvar responded that specific examples were unnecessary because he "knew what [Gates] was talking about". When questioned regarding his personal observations of Wyley, however, Huvar merely stated that he observed Wyley throw temper tantrums on a few occasions and characterized Wyley's hostility toward Gates as "[a] basic 17-year-old temperament and attitude toward his father when he was made to [d]o something that he didn't want to do". In our view, this and the other proof offered by plaintiffs was insufficient to raise a question of fact as to Wyley's alleged propensity for vicious conduct and Gates' knowledge of it; therefore, Hatch's motion for summary judgment in this regard was properly granted.

Turning to plaintiffs' allegations of negligent entrustment, "it is well-established law that a parent owes a duty to third parties to shield them from an infant child's improvident use of a dangerous instrument, at least, if not especially, when the parent is aware of and capable of controlling its use" *(Nolechek v Gesuale,* 46 NY2d 332, 338; *see, Len v City of Cohoes,* 144 AD2d 187, 187-188; *Gordon v Harris,* 86 AD2d 948, 949, supra).* Here, it is readily apparent that the Walther pistol qualifies as a dangerous instrument. It is equally apparent, however, that Gates was not aware that Wyley possessed the pistol and, therefore, had no opportunity to control or prevent Wyley's use of it. We are also unpersuaded that Gates' apparent storage of the pistol in an unlocked dresser drawer is sufficient to raise a question of fact as to negligent entrustment. The record plainly indicates that each and every gun was taken from Gates' residence during the mock burglary, including those weapons stored in a locked gun cabinet. Plaintiffs' remaining arguments, including their claim that the need for additional discovery compels denial of Hatch's motion, have been examined and found to be lacking in merit.

Mikoll, J. P., Mercure, White and Yesawich Jr., JJ., concur. Ordered that the order is affirmed, without costs.