Damphier v Brasmeister (2020 NY Slip Op 03961)





Damphier v Brasmeister


2020 NY Slip Op 03961


Decided on July 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 16, 2020

528571

[*1]Sandra Damphier, Individually and as Administrator of the Estate of Paul Damphier Jr., et al., Appellants,
v
Emily Brasmeister et al., Defendants, and Timothy Brasmeister et al., Respondents.

Calendar Date: June 9, 2020

Before: Lynch, J.P., Devine, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Law Offices of Elmer Robert Keach, III, PC, Albany (Elmer Robert Keach III of counsel), for appellants.
Boeggeman, Corde, Ondrovic & Hurley, PC (Paul A. Hurley of counsel), for Timothy Brasmeister, respondent.
Flink Maswick Law PLLC, Lake Placid (Edward B. Flink of counsel), for Robert Phelps and another, respondents.



Aarons, J.
Appeal from an order of the Supreme Court (Aulisi, J.), entered July 26, 2018 in Montgomery County, which, among other things, granted motions by defendants Timothy Brasmeister, Donna Phelps and Robert Phelps for summary judgment dismissing the complaint against them.
In July 2012, defendants Anthony Brasmeister and Matthew Phelps, each of whom used a rifle, shot and killed two teenagers. Plaintiffs, the mothers of the teenage victims, commenced this action against defendants Donna Phelps and Robert Phelps (hereinafter collectively referred to as the Phelpses) and defendant Timothy Brasmeister (hereinafter Brasmeister), among others, alleging, as relevant here, causes of action for negligent entrustment and negligent supervision.[FN1] Following joinder of issue and discovery, Brasmeister and the Phelpses separately moved for summary judgment dismissing the complaint insofar as asserted against them. In a thorough decision and order entered in July 2018, Supreme Court granted the motions. Plaintiffs appeal. We affirm.
A parent may be liable for the torts of his or her child "where the parent (1) fails to supervise a child with a known propensity toward vicious conduct or (2) entrusts a child with a dangerous instrument" (Brahm v Hatch, 203 AD2d 640, 641 [1994]; see Gordon v Harris, 86 AD2d 948, 949 [1982]). Regarding a claim of negligent entrustment, "a parent owes a duty to third parties to shield them from an infant child's improvident use of a dangerous instrument, at least, if not especially, when the parent is aware of and capable of controlling its use" (Nolechek v Gesuale, 46 NY2d 332, 338 [1978]; see LaTorre v Genesee Mgt., 90 NY2d 576, 580-581 [1997]; Wright v O'Leary, 172 AD3d 1495, 1496 [2019]). Under a theory of negligent supervision, "it must be established both that the child had a tendency to engage in vicious conduct which might endanger a third party and that the child's parents had knowledge of his or her propensities in this regard" (Brahm v Hatch, 203 AD2d at 641 [emphasis and brackets omitted]).[FN2] A grandparent who "exercises temporary custody and control of a child may be liable for any injury sustained by the child that was caused by the grandparent's negligence" (Kolodziejczak v Kolodziejczak, 83 AD3d 1377, 1378 [2011]).
As to the rifle used by Matthew, Donna Phelps stated at her deposition that it was kept in a locked case and only she and Robert Phelps knew where the keys to the case were located. Robert Phelps testified at his deposition that, in the years prior to the shooting, no one had used the rifle and that, when he occasionally checked the case, it was locked. Anthony similarly testified that, when he went to the Phelpses' house, he saw that the gun case was locked and that the Phelpses were not the type of people to leave guns out in the open. Neither Donna Phelps nor Robert Phelps consented or permitted Matthew to possess the rifle. They were also unaware how Matthew accessed the rifle. Indeed, Donna Phelps testified that "[Matthew] didn't get [the rifle] from me."
Regarding the rifle used by Anthony, the record discloses that it was owned by the ex-boyfriend of Brasmeister's ex-wife [FN3] and that Anthony stole it from him. Brasmeister stated at his deposition that, following the shooting, he screwed Anthony's bedroom shut in the fear of a possible retaliation. After an investigation, a state trooper found the rifle in Anthony's bedroom. Brasmeister testified, however, that he did not know that Anthony had access to a firearm in his bedroom, that he was not aware of any ammunition therein and that he did not give him the rifle at issue. He also stated that Anthony was not supposed to have ammunition in his bedroom. Anthony likewise stated that Brasmeister never saw the rifle or any ammunition in his room and that he never told his parents that he stole the gun from the ex-boyfriend. The state trooper also testified that he did not think that Brasmeister knew that Anthony had obtained the rifle.
The foregoing proof establishes that the Phelpses and Brasmeister did not give the respective rifles to Matthew or Anthony. They also did not know how Matthew or Anthony obtained the rifles or were otherwise aware that they had access to them. In response to this prima facie showing of entitlement to summary judgment by Brasmeister and the Phelpses, plaintiffs failed to raise a triable issue of fact. Accordingly, Supreme Court correctly dismissed the negligent entrustment cause of action insofar as asserted against Brasmeister and the Phelpses (see Brahm v Hatch, 203 AD2d at 642; Len v City of Cohoes, 144 AD2d 187, 188-189 [1988]; Gordon v Harris, 86 AD2d at 949).
Turning to the negligent supervision cause of action, the Phelpses demonstrated that they were unaware that Matthew had threatened to harm anyone or exhibited any vicious conduct or homicidal thoughts. Robert Phelps stated that Matthew never got in trouble with law enforcement and that he never saw him use illegal drugs. Indeed, Robert Phelps testified that "[Matthew] never got in trouble" and that he did not have to discipline him. Donna Phelps likewise testified that "[Matthew] was an all-around good kid" and that he did not have problems at school or with law enforcement. Furthermore, other witnesses testified that Matthew did not have any problems either at school or elsewhere prior to the murders. Donna Phelps stated that, when she heard about the shooting, she "could not believe what had happened."
In opposition to the Phelpses' prima facie showing, plaintiffs failed to raise an issue of fact. Plaintiffs rely on Matthew's social media postings or text messages discussing guns or depicting him rapping songs with violent-themed lyrics. Even assuming, without deciding, that such postings demonstrated an individual's propensity toward violent conduct, the record discloses that neither Donna Phelps nor Robert Phelps monitored Matthew's social media accounts or cell phone. To the extent that plaintiffs contend that Matthew's social media postings were publicly accessible, it is speculative to conclude that the Phelpses viewed or were aware of the postings based on such mere fact. Accordingly, Supreme Court correctly dismissed the negligent supervision claim insofar as asserted against the Phelpses (see Rivers v Murray, 29 AD3d 884, 884-885 [2006]; DiCarlo v City of New York, 286 AD2d 363, 365 [2001]; Armour v England, 210 AD2d 561, 561-562 [1994]; Brahm v Hatch, 203 AD2d at 641-642). Plaintiffs' remaining contentions, to the extent not discussed herein, have been considered and are without merit.
Lynch, J.P., Devine, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, with one bill of costs.



Footnotes

Footnote 1: Brasmeister is the father of Anthony and the Phelpses are the grandparents of Matthew.

Footnote 2: Plaintiffs did not raise any argument with respect to the dismissal of the negligent supervision cause of action insofar as asserted against Brasmeister. As such, any argument is deemed abandoned (see Panella Descendants' Trust v Northwest Bay Partners, Ltd., 148 AD3d 1377, 1378 n [2017]).

Footnote 3: The ex-wife is the mother of Anthony. Although the ex-wife was originally named as a defendant, the action was discontinued against her.