Matter of Sugarman v New York State Bd. of Elections (2021 NY Slip Op 00469)





Matter of Sugarman v New York State Bd. of Elections


2021 NY Slip Op 00469


Decided on January 28, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 28, 2021

530368

[*1]In the Matter of Risa S. Sugarman, as Chief Enforcement Counsel of the New York State Board of Elections, Appellant,
v
New York State Board of Elections et al., Respondents.

Calendar Date: December 16, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Reynolds Fitzgerald, JJ.


New York State Board of Elections, Division of Election Law Enforcement, Albany (Carla V. DiMarco of counsel), for appellant.
New York State Board of Elections, Albany (Brian Quail of counsel), for respondents.



Aarons, J.
Appeal from a judgment of the Supreme Court (Nichols, J.), entered October 25, 2019 in Albany County, which, among other things, dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to declare unconstitutional certain amended regulations promulgated by respondents.
In 2014, as part of the Public Trust Act, the Division of Election Law Enforcement (hereinafter the Division) was a unit created within respondent New York State Board of Elections (hereinafter the State Board) and was to be headed by a chief enforcement counsel (see Election Law §§ 3-100 [3-a]; 3-104 [1] [a]). Petitioner, the chief enforcement counsel, was empowered to investigate, either on her own initiative or upon a complaint, violations of the Election Law (see Election Law §
3-104 [1] [b]). In 2018, the State Board amended the existing regulations (9 NYCRR part 6203) by, among other things, adding provisions setting forth the process by which petitioner may obtain a subpoena or request a special investigator and specifying petitioner's reporting requirements to the State Board. Petitioner commenced this combined CPLR article 78 proceeding and action for declaratory relief seeking an order enjoining respondents from enforcing the amended regulations, invalidating them and declaring them unconstitutional and inapplicable to her. Respondents answered and asserted a counterclaim seeking a declaration requiring petitioner to comply with the amended regulations. Supreme Court dismissed the petition/complaint and granted the counterclaim. Petitioner appeals.
Petitioner contends that the State Board violated the doctrine of separation of powers when promulgating the amended regulations. "A legislature may enact a general statutory provision and delegate power to an agency to fill in the details, as long as reasonable safeguards and guidelines are provided to the agency" (Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn., 25 NY3d 600, 608 [2015]). To determine if the State Board impermissibly engaged in legislative policymaking, as opposed to administrative rulemaking, consideration of the four factors articulated in Boreali v Axelrod (71 NY2d 1, 12-14 [1987]) is required. Those factors are whether the State Board "(1) operated outside of its proper sphere of authority by balancing competing social concerns in reliance solely on its own ideas of sound public policy; (2) engaged in typical, interstitial rulemaking or wrote on a clean slate, creating its own comprehensive set of rules without the benefit of legislative guidance; (3) acted in an area in which the Legislature has repeatedly tried — and failed — to reach agreement in the face of substantial public debate and vigorous lobbying by a variety of interested factions; and (4) applied its special expertise or technical competence to develop the challenged regulations" (Matter of Dry Harbor Nursing Home v Zucker, 175 AD3d 770, 773 [2019[*2]] [internal quotation marks and citations omitted], lv dismissed and denied 35 NY3d 984 [2020]; see Garcia v New York City Dept. of Health & Mental Hygiene, 31 NY3d 601, 609 [2018]).
Petitioner's central theme is that she and the Division operate independently of the State Board. We disagree. According to the statute, the Division was "established within the [S]tate [B]oard" (Election Law § 3-104 [1] [a] [emphasis added]). Petitioner likewise has the "sole authority within the [S]tate [B]oard" to investigate Election Law violations (Election Law § 3-104 [1] [b] [emphasis added]). Under the statutory scheme, petitioner "may ask that the [S]tate [B]oard authorize . . . her" to exercise powers that the State Board had (Election Law § 3-104 [3]) — one of which was to subpoena witnesses and documents (see Election Law § 3-102 [5]). The State Board would then vote on a request by petitioner and, in the event of a tie, petitioner casts the tiebreaking vote (see Election Law § 3-104 [3]). If petitioner determines that a civil proceeding is necessary for an Election Law violation, she must submit a report to an assigned hearing officer, who would then prepare findings (see Election Law § 3-104 [5] [a]). Petitioner is then required to adopt the hearing officer's findings (see Election Law § 3-104 [5] [a]). If petitioner believes criminal prosecution is warranted for an Election Law violation, she must present findings to the State Board on this point for the State Board's vote (see Election Law § 3-104 [5] [b]).
It is true that petitioner has the "sole authority" to investigate Election Law violations (Election Law § 3-104 [1] [b]). This, however, does not mean that she has unfettered and unbridled authority. Indeed, although petitioner refers to the findings and recommendations of the Moreland Commission and the legislative intent of the Public Trust Act, the legislation, as ultimately enacted, did not confer upon petitioner independent authority to issue subpoenas, but rather referred back to the State Board's authority to do so. In view of the provisions of Election Law § 3-104, petitioner and the Division do not operate wholly freely and independently of the State Board but, as respondents note, interdependently with it.
That said, the amended regulations set forth the specific process and time frame by which petitioner must request a subpoena, when the State Board must vote on such request and when petitioner may vote, as well as delineating the scope of a requested subpoena (see 9 NYCRR 6203.2). The amended regulations likewise provide that petitioner must provide the State Board with quarterly reports regarding, among other things, received complaints, initiated proceedings and entered-into settlements (see 9 NYCRR 6203.4). Given that the amended regulations further the policy behind Election Law § 3-104 of increasing transparency and ending the gridlock in Election Law investigations, the first Boreali factor favors respondents (see [*3]Matter of Spence v Shah, 136 AD3d 1242, 1245-1246 [2016], lv denied 27 NY3d 908 [2016]).
Regarding the second factor, contrary to petitioner's assertion, the State Board did not write on a clean slate in promulgating the amended regulations. The Legislature provided that the State Board "may promulgate rules consistent with law to effectuate the provisions of [Election Law § 3-104]" (Election Law § 3-104 [8]). In our view, the State Board merely filled in the details of a broad policy and, therefore, this factor weighs in respondents' favor (see Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn., 25 NY3d at 611; Matter of Reardon v Global Cash Card, Inc., 179 AD3d 1228, 1231 [2020], lv dismissed 35 NY3d 1001 [2020]).
As to the remaining factors, there is no indication in the record that the Legislature tried and failed to pass legislation regarding the process to obtain subpoenas for investigations into Election Law violations. Although no specialized or technical expertise was required to develop the amended regulations, upon balancing the Boreali factors, the State Board did not exceed its authority in promulgating them (see Matter of LeadingAge N.Y., Inc. v Shah, 32 NY3d 249, 265-266 [2018]; Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv., 27 NY3d 174, 185 [2016]; Matter of Spence v Shah, 136 AD3d at 1245-1246).
Petitioner also contends that the amended regulations should be invalidated as arbitrary and capricious. "The standard for judicial review of an administrative regulation is whether the regulation has a rational basis and is not unreasonable, arbitrary or capricious" (Matter of Acevedo v New York State Dept. of Motor Vehs., 29 NY3d 202, 226 [2017] [internal quotation marks and citation omitted]). In our view, the amended regulations governing both the process of requesting a subpoena by petitioner (see 9 NYCRR 6203.2, 6203.3) and the reporting/notification requirements of petitioner (see 9 NYCRR 6203.4, 6203.5, 6203.8) are rational inasmuch as they provide a standard procedure for petitioner to carry out her investigative functions and are consistent with Election Law § 3-104. Petitioner's challenge to 9 NYCRR 6203.6, which states that the Division must send the required letters under Election Law §
14-108 (5), is unavailing. Those letters, according to Election Law § 14-108 (5), must be sent by "[t]he [S]tate [B]oard . . . or other board of elections" and, as noted, the Division was established "within" the State Board (Election Law § 3-104 [1] [a]). Nor do we agree with petitioner that 9 NYCRR 6203.7, which pertains to a request by the Division for the appointment of a special investigator, is arbitrary. Respondents do not dispute that petitioner has "sole authority over personnel decisions within the [Division]" (Election Law § 3-100 [3-a]). The State Board, however, has the power to appoint special investigators (see Election Law § 3-107) — a power that remained [*4]unchanged with the amendment of Election Law § 3-104. In view of this, there is nothing irrational in requiring petitioner to provide a reason when requesting a special investigator (see 9 NYCRR 6203.7 [a]).
Furthermore, the record contains, among other things, various comments in opposition to the amended regulations, and a notice of proposed rulemaking with comments and responses thereto. The record also reflects that the State Board, in an official meeting, considered the arguments advanced by petitioner in opposition to the amended regulations. The State Board addressed these concerns and ultimately approved the amended regulations in a 3-1 vote. Given that the record discloses that the State Board made an "informed and reasonable determination" (Matter of Acevedo v New York State Dept. of Motor Vehs., 29 NY3d at 228), petitioner's contention that the amended regulations are arbitrary or capricious is without merit (see Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382, 396-397 [1995]; Matter of Spence v Shah, 136 AD3d at 1246; Matter of Medical Socy. of State of N.Y. v New York State Dept. of Social Servs., 148 AD2d 144, 148 [1989], lv denied 74 NY2d 617 [1989]).
Finally, as to respondents' counterclaim, the only act of noncompliance specified by respondents was petitioner's failure to submit the reports referenced in 9 NYCRR 6203.4.[FN1] According to this regulation, petitioner "shall provide a written report
. . . at least once in each calendar quarter" (9 NYCRR 6203.4) containing information about complaints received by the Division, settlements reached and proceedings commenced, among other things. Initially, we note that petitioner is required to submit a quarterly report in view of the mandatory language of 9 NYCRR 6203.4. This language, however, is not wholly determinative as to the nature of 9 NYCRR 6203.4 and the issue of whether respondents are entitled to a mandamus to compel (see Matter of Sullivan v Siebert, 70 AD2d 975, 975 [1979]; Matter of 121-129 Broadway Realty v New York State Div. of Human Rights, 43 AD2d 754, 754 [1973]). "[W]here a public officer is required to perform an act within a specified time, it will be considered as directory only, unless the nature of the act to be performed or the language used by the Legislature shows that the designation of the time was intended as a limitation of the power of the officer" (Matter of Sullivan v Siebert, 70 AD2d at 975; see Matter of Grossman v Rankin, 43 NY2d 493, 501 [1977]). In the absence of language in 9 NYCRR 6203.4 indicating that the time limitation therein was intended to constrict petitioner's power and taking into account that "the limitation of the time within which a public body is to act does not oust it of jurisdiction to act after the expiration of that time" (Matter of Rochester Gas & Elec. Corp. v Maltbie, 272 App Div 162, 165 [1947]), the act that respondents seek to compel of petitioner is directory and not ministerial. As such, the [*5]counterclaim should have been dismissed.[FN2] The parties' remaining assertions have been considered and are without merit.
Garry, P.J., Egan Jr., Mulvey and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as granted respondents' counterclaim; said counterclaim dismissed; and, as so modified, affirmed.



Footnotes

Footnote 1: We reject petitioner's claim that respondents lacked capacity to assert their counterclaim given that the State Board has the power to "perform such acts as may be necessary to carry out the purposes" of the Election Law (Election Law § 3-102 [17]).

Footnote 2: Our decision should not be construed as permitting petitioner to disregard the mandatory reporting provisions of 9 NYCRR 6203.4.