Matter of Spence v State Univ. of N.Y. (2021 NY Slip Op 03888)





Matter of Spence v State Univ. of N.Y.


2021 NY Slip Op 03888


Decided on June 17, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 17, 2021

531135
[*1]In the Matter of Wayne Spence, as President of the New York State Public Employees Federation, AFL-CIO, et al., Appellants,
v
State University of New York et al., Respondents.

Calendar Date:April 20, 2021

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Renee L. Delgado, New York State Public Employees Federation, AFL-CIO, Albany (David J. Friedman of counsel), for appellants.
Letitia James, Attorney General, Albany (Joseph M. Spadola of counsel), for respondents.



Reynolds Fitzgerald, J.
Appeal from an order and judgment of the Supreme Court (Fisher, J.), entered February 24, 2020 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Board of Trustees of respondent State University of New York increasing salaries for certain nurse positions.
In October 2018, respondent Stony Brook University Hospital (hereinafter SBUH) issued a proposal to increase the salary for Teaching and Research Center Nurses II and III. The proposal set forth that, between 2011 and 2017, SBUH experienced a significant increase in the turnover rate of registered nurses, most notably among nurses in their first five years of employment. SBUH attributed the increase largely to the fact that many competing hospitals in Nassau and Suffolk Counties offered substantially higher salaries. The proposal additionally maintained that existing nurses were experiencing burnout from continually training new nurses and working with a higher than ideal staff to patient ratio. To that end, the proposal sought a nonuniform "front weights" salary increase, with salary increases in the first six years of experience steps. The former chancellor of respondent Board of Trustees of the State University of New York (hereinafter Board of Trustees) approved the proposal's salary increases and differentials in December 2018.
Petitioners commenced this CPLR article 78 proceeding asserting that the salary adjustments violated Education Law § 355-a (13) (a) and Civil Service Law § 130 (14) because no representative study was conducted prior to increasing the salaries. They further claim that, since newer employees receive a greater salary increase than nurses with more seniority, the differentials have a disparate impact on nurses who are over 40 years of age and therefore respondents' actions violated Executive Law § 296 and the federal Age Discrimination in Employment Act (see 29 USC § 621 et seq.). Respondents moved pre-answer to dismiss the petition. Supreme Court converted the motion to a motion for summary judgment and afforded the parties an opportunity to supplement their papers. Thereafter, Supreme Court dismissed the petition finding, among other things, that respondents had performed a study and the approval of the nonuniform pay increase was not arbitrary and capricious or contrary to law. Supreme Court further found that petitioners' claims arising out of the federal Age Discrimination in Employment Act failed because they did not file a claim with the Equal Employment Opportunity Commission (hereinafter EEOC). Finally, the court similarly dismissed petitioners' state claims finding that they failed to exhaust their administrative remedies under Executive Law § 298.
"Our review of petitioner[s'] CPLR article 78 claims is limited to whether [respondents'] determinations, made without a hearing, were arbitrary and capricious, irrational, affected by an error of law or an abuse [*2]of discretion" (Matter of Buffalo Teachers Fedn., Inc. v Elia, 162 AD3d 1169, 1172 [2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 915 [2019]). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Mallick v New York State Div. of Homeland Sec. & Emergency Servs., 145 AD3d 1172, 1174 [2016] [internal quotation marks and citations omitted]). "When a determination is supported by a rational basis, it must be sustained even if the reviewing court would have reached a different result" (Matter of CDE Elec., Inc. v Rivera, 124 AD3d 1178, 1180 [2015] [citation omitted]).
Education Law § 355-a (13) (a) provides that, "[w]henever a representative study of peer institutions in private or other public hospitals in the same geographic area as a state university hospital shows that wage rates and/or pay differentials of nurses employed in such peer institutions are higher than the wage rates and/or pay differentials paid by the state to teaching and research center nurses of the state university, the state university trustees may authorize and prescribe pay differentials . . . for teaching and research center nurses in the classified civil service at the state university hospitals . . . in such areas or locations." In support of its motion for summary judgment, respondents submitted the affidavit of the Chief Human Resources Officer for SBUH. She affirmed that the salary increase proposal included data from various surveys and attached numerous charts, including nurse separation rates, number of nurses' resignations by years of service, proposed geographical pay increase, and median salaries for registered nurses and assistant head nurses in Nassau and Suffolk Counties. Petitioners argue that, because the study failed to identify each private or public hospital involved, the data collected may have been garnered from health care settings other than "hospitals" per se, rendering any such data invalid. We disagree.
Education Law § 355-a (13) (a) does not specify the methodology to be undertaken when conducting the study, limit the data to be utilized, or define the term hospital; instead, it refers only to "private or other public hospitals." Public Health Law § 2801 (1) defines hospital broadly to mean "a facility or institution engaged principally in providing services by or under the supervision of a physician . . . for the prevention, diagnosis or treatment of human disease, pain, injury, deformity or physical condition, including, but not limited to, a general hospital, public health center, diagnostic center, treatment center, dental clinic, dental dispensary, [and] rehabilitation center." The purpose of the study is to determine if nurses in comparable employment positions in the same geographical area are receiving higher wages. As such, respondents complied with the general requirements and purpose of the statute by conducting a survey of salaries [*3]of nurses employed in area hospitals.
Petitioners also argue that the study was not representative because it utilized job titles not equivalent to the civil service titles. Here, respondents determined that the titles of registered nurse and assistant head nurse/assistant nurse manager were comparable to Teaching and Research Center Nurses II and III. Respondents have specialized knowledge of the employment practices and the duties involved in each job, and courts will defer to their determination (see Matter of Kent v Cuomo, 124 AD3d 1185, 1187 [2015], lv denied 25 NY3d 906 [2015]). Accordingly, we find that respondents conducted a study of representative peer institutions and rationally interpreted the study to approve a salary increase to the Teaching and Research Center Nurses II and III (see Matter of Spence v New York State Governor's Off. of Empl. Relations, 183 AD3d 1199, 1201-1202 [2020], lv denied 35 NY3d 916 [2020]; Matter of Advanced Therapy, OT, PT, SLP, Psychologist, Registered Professional Nurse [RN], PLLC v New York State Educ. Dept., 140 AD3d 1367, 1369 [2016], appeal dismissed and lv denied 28 NY3d 1058 [2016]).
Petitioners next contend that respondents violated Civil Service Law § 130 (14) because SBUH's chief administrative officer did not request the Board of Trustees to conduct the study. Civil Service Law § 130 (14) provides that "wage rates and/or pay differentials paid by the state to teaching and research center nurses of [respondent] [S]tate [U]niversity of New York pursuant to [Education Law § 355-a (13)] may be based on a study of representative peer institutions in private or other public hospitals in the same geographic area as a hospital of the [S]tate [U]niversity which shows that pay differentials of nurses employed by such peer institutions are higher than the wage rates and/or pay differentials paid by the state to teaching and research center nurses of the [S]tate [U]niversity. Whenever, in the opinion of the chief administrative officer of the health science centers at which teaching and research center nurses are employed, additional compensation for such employees is necessary to maintain adequate support to protect the health, safety and welfare of patients, such chief administrative officer shall request the . . . [B]oard of [T]rustees to conduct such a study." The "statute must be considered as a whole and its various sections construed with reference to one another and in a way that renders them internally compatible" (Matter of Retired Pub. Empls. Assn., Inc. v Cuomo, 123 AD3d 92, 95 [2014]). In applying this doctrine to Civil Service Law § 130 (14), it is readily apparent that the study and attendant wage increase is not dependent on or limited to the request of the chief administrative officer, but rather that he or she is mandated to request a study when, in his or her opinion, a wage increase is necessary to protect the health, safety and welfare of the patients.
Further, petitioners' interpretation [*4]does not comport with Education Law § 355-a (13), which provides that, "[n]otwithstanding [Civil Service Law § 130 (1) through (13)] and [Civil Service Law § 135] or any other provisions of law, rule or regulations to the contrary," teaching and research nurses wages may be increased upon a representative peer study showing that nurses in private and public hospitals are paid more. The representative study of peer institutions is the only condition listed in Education Law § 355-a (13) and does not specify nor limit who must seek the peer study. "[W]here the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (Matter of Retired Pub. Empls. Assn., Inc. v Cuomo, 123 AD3d at 94-95 [internal quotation marks and citations omitted]). We believe that the Legislature's inclusion of the word "[n]otwithstanding," followed by references to multiple statutes, was deliberate and was intended to authorize more than one avenue to justify an increase in nurses' wages (see Matter of State of New York v John S., 23 NY3d 326, 340-341 [2014]). Accordingly, we find petitioners' argument unpersuasive.
Petitioners next argue that respondents exceeded their authority by increasing the salary in a nonuniform manner. Education Law § 355-a (13) (a) does not require pay differentials to be uniform. It simply states that "pay differentials under this subdivision shall be percentages or fixed dollar amounts" (Education Law § 355-a [13] [a]). Here, the salaries of teaching and research center nurses with fewer years of experience were increased more than those who had additional years of experience. These increases were designed to lessen the pay gap between comparable peer institution nurses, thus incentivizing nurses to seek and remain in State University employment and decrease resignations in the first five years of employment. We reject petitioners' argument that the pay differential must be uniform (see Matter of North Gate Health Care Facility, LLC v Zucker, 174 AD3d 1201, 1204 [2019], lv denied 35 NY3d 903 [2020]).
Petitioners finally contend that the salary differentials favored nurses with less seniority than those nurses (presumably older) with more experience. However, disparate impact claims are not cognizable under the Human Rights Law (see Bohlke v General Elec. Co., 293 AD2d 198, 200 [2002], lv dismissed 98 NY2d 693 [2002]) and, although disparate impact claims are cognizable under the federal Age Discrimination in Employment Act, no civil action may be commenced until 60 days after a charge alleging unlawful discrimination has been filed with the EEOC (see 29 USC § 626 (d)). It is undisputed that petitioners did not file a claim with the EEOC. Moreover, "petitioners have done little more than point out that the pay plan at issue is relatively less generous to older workers than to younger workers" (Smith v City of Jackson, Miss., 544 US 228, 241 [2005]). The differential [*5]treatment in the pay increase here, as in Smith, was designed to raise the salaries of less experienced nurses to make them competitive with comparable positions in non-State University employment. Accordingly, as the salary adjustments were based on a reasonable non-age factor that corresponded with respondents' legitimate goal of increasing nurses' pay, there is no disparate impact (see Texas Dept. of Housing and Community Affairs v Inclusive Communities Project, Inc., 576 US 519, 538-539 [2015]).
Garry, P.J., Egan Jr., Aarons and Pritzker, JJ., concur.
ORDERED that the order and judgment is affirmed, without costs.