Matter of North Shore Ambulance & Oxygen Serv. Inc. v New York State Emergency Med. Servs. Council (2021 NY Slip Op 07593)





Matter of North Shore Ambulance & Oxygen Serv. Inc. v New York State Emergency Med. Servs. Council


2021 NY Slip Op 07593


Decided on December 30, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 30, 2021

532207
[*1]In the Matter of North Shore Ambulance and Oxygen Service Inc., Appellant,
v
New York State Emergency Medical Services Council, Respondent.

Calendar Date:November 19, 2021

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Colangelo, JJ.

Nixon Peabody LLP, Albany (Daniel J. Hurteau of counsel), for appellant.
Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for respondent.



Clark, J.
Appeal from a judgment of the Supreme Court (Weinstein, J.), entered August 31, 2020 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent denying petitioner's request for an ambulance service operating certificate for Nassau County.
An ambulance service may operate in this state only if the Department of Health (hereinafter DOH) certifies that a public need for the service exists (see Public Health Law §§ 3005 [1], [6]; 3008 [1]), and DOH has defined public need as "the demonstrated absence, reduced availability or an inadequate level of care in ambulance or emergency medical service available to a geographical area which is not readily correctable through the reallocation or improvement of existing resources" (New York State Department of Health, Bureau of Emergency Medical Services, Policy Statement No. 06-06 at 29 [May 26, 2006]). Petitioner is a for-profit ambulance service provider certified to operate in Kings and Queens Counties, and it predominately provides nonemergency transportation to Medicaid recipients to and from prescheduled medical appointments. After two entities providing ambulance services to Nassau and Suffolk Counties ceased operations, DOH eventually permitted petitioner to provide limited ambulance services in those counties if all other licensed, in-county providers were unwilling or unable to service a call, a process facilitated by LogistiCare, a transportation broker contracted by DOH. Petitioner subsequently applied for an ambulance service operating certificate — referred to less formally as a "certificate of need" — that would permit it to permanently expand its territory and operate fully in Nassau County, providing both nonemergency and emergency transport. Stakeholders were given the opportunity for comment and, following a public hearing, a Hearing Officer recommended approving petitioner's request. The Regional Emergency Medical Services Council (hereinafter REMSCO) for Nassau County, however, voted to deny the application following committee review.
Petitioner pursued an administrative appeal to respondent — a 32-member body statutorily comprised of individuals knowledgeable in various aspects of emergency medical services, including representatives of ambulance services operating for profit (see Public Health Law § 3002 [1]). An Administrative Law Judge (hereinafter ALJ), appointed to review the record, also recommended that petitioner's request be granted. Respondent's Systems Committee (hereinafter committee) was the next to review the matter, and each of its members was provided with the complete administrative record for review in advance of the committee meeting at which petitioner's application would be addressed. At that meeting, one of the committee members, Al Lewis, read a prepared statement opposing petitioner's application, explaining that the statement was on behalf of the United New York Ambulance [*2]Network (hereinafter UNYAN), a professional trade association of proprietary ambulance service providers across the state with which Lewis had been involved for a number of years. After a seconded motion to uphold Nassau County REMSCO's denial of petitioner's application failed, the committee voted to remand the matter to Nassau County for a new vote in light of the unnecessarily complex phrasing of the motion voted upon. That disposition, and the complete administrative record, was passed on to respondent for final review, and respondent, concluding that the committee did not have the authority to remand, entertained a new seconded motion to grant petitioner's application. Lewis, in turn, provided similar remarks on behalf of UNYAN, and respondent ultimately rejected the motion by a vote of 13 to 7, with 1 abstention.
Petitioner then commenced this CPLR article 78 proceeding, arguing, as relevant here, that respondent's determination was substantively and procedurally arbitrary and capricious. In petitioner's view, respondent ignored evidence demonstrating public need in favor of the financial well-being of existing ambulance service providers in Nassau County, undermining the purpose of the Public Health Law. Petitioner also urged that Lewis' remarks on behalf of UNYAN demonstrated a conflict of interest that warranted his disqualification from voting on the matter. Respondent joined issue, and Supreme Court ultimately found that there was no basis upon which to disturb respondent's determination. This appeal ensued.[FN1]
Respondent "is the administrative agency responsible for making a final determination on public need" (Matter of Tri-State Ambulance Serv. v State of N.Y. Dept. of Health, 114 AD2d 546, 547 [1985]; see Public Health Law § 3002 [3]) and, in reviewing a determination such as this, judicial review is limited to "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; see Matter of Madison County Indus. Dev. Agency v State of N.Y. Auths. Budget Off., 33 NY3d 131, 135 [2019]; Matter of Biggs v Eden Renewables LLC, 188 AD3d 1544, 1548 [2020]). Relevant here, a determination may be said to lack a rational basis, or be arbitrary and capricious, "when it is taken without sound basis in reason or regard to the facts" (Matter of Murphy v New York State Div. of Hous. & Community Renewal, 21 NY3d 649, 652 [2013] [internal quotation marks and citation omitted]; see Matter of Spence v State Univ. of N.Y., 195 AD3d 1270, 1271 [2021]; Matter of Meyer v Zucker, 185 AD3d 1265, 1266 [2020], lv denied 36 NY3d 904 [2021]). It is well settled that a court "cannot substitute [its] view of the factual merits of [a] controversy for that of the administrative agency" (Matter of Tri-State Ambulance Serv. v State of N.Y. Dept. of Health, 114 AD2d at 547-548; see Matter of People v Schofield, 199 AD3d 5, 11 [2021]; Matter of Hart v [*3]Town of Guilderland, 196 AD3d 900, 912 [2021]), "even if the court concludes that another result would also have been rational" (Matter of Adirondack Wild: Friends of the Forest Preserve v New York State Adirondack Park Agency, 34 NY3d 184, 195 [2019] [internal quotation marks and citation omitted]; see Matter of Save America's Clocks, Inc. v City of New York, 33 NY3d 198, 207 [2019]; Matter of Spence v New York State Dept. of Civ. Serv., 196 AD3d 934, 936 [2021]). "Deference to the judgment of [an] agency, when supported by the record, is particularly appropriate when the matter under review involves a factual evaluation in the area of the agency's expertise" (Matter of Warder v Board of Regents of Univ. of State of N.Y., 53 NY2d 186, 194 [1981] [citation omitted], cert denied 454 US 1125 [1981]; see Matter of Beer v New York State Dept. of Envtl. Conservation, 189 AD3d 1916, 1918 [2020]; Matter of Fuller v New York State Dept. of Health, 127 AD3d 1447, 1448 [2015]).
There is no real dispute regarding petitioner's fitness or competency (see Public Health Law § 3005 [5], [8]; New York State Department of Health, Bureau of Emergency Medical Services, Policy Statement No. 06-06 at 29 [May 26, 2006]). As to public need, petitioner first relies upon population trends, providing statistics regarding overall population growth in Nassau and Suffolk Counties, the increasing poverty rate on Long Island, which was mostly attributable to Suffolk County, and both counties' aging populations, leading to an increased need for nonemergency ambulance services for those dependent on Medicaid or Medicare and otherwise unable to transport themselves.[FN2] According to petitioner, its existing fleet of 30 ambulances and staff of 42 emergency medical technicians and 11 paramedics, among others, could service an additional 15 to 20 patients daily, or approximately 6,240 calls annually, if its application were approved, meeting the growing need, and further resource expansion was also planned. Petitioner placed significant emphasis upon proof that a number of requests for nonemergency transport in Nassau and Suffolk Counties had gone unfulfilled in the years prior to its application. Specifically, Medicaid records establish that approximately 445 requests for nonemergency transport were canceled in Nassau and Suffolk Counties between August 2016 and July 2017, a little over one per day (which would not account for other unfulfilled requests not tracked by Medicaid); 113 of those canceled requests originated in Nassau County.[FN3] These Medicaid-confirmed numbers encompass the period of time following the temporary situation created by the cessation of ambulance services from two local providers. As a result, patients were resorting to contacting 911 for transportation to routine medical appointments. At the Nassau County public hearing, a representative of LogistiCare conveyed that the state incurred approximately $1.5 million in costs, over an unspecified time period, [*4]attributable to paying existing providers override reimbursement rates, among other incentives, in order to secure nonemergency transportation for Medicaid patients.
In addition, petitioner's application had some community support, including from a psychiatric center, a dialysis center and two fire departments, one of which had the mistaken belief that petitioner would not be providing any emergency transportation services. Community opposition to the application was greater, and it largely concerned the stability of local emergency medical services (hereinafter EMS) in the event of market saturation, as well as an alleged shortage of qualified EMS staff in the area. At the public hearing, existing ambulance service providers expressed their willingness to reallocate their resources to remedy any service gap, and it was repeatedly asserted that there are issues with LogistiCare's information sharing, including the lead time provided for transport requests. At least one existing provider expressed dismay that so many calls were being left unfulfilled, stating that it was barely receiving requests from LogistiCare. The record also contains evidence that new ambulance service providers purchased the operating certificates from the aforementioned providers that ceased operations and that those new providers significantly increased capacity from what had been available (see generally Public Health Law § 3010).
Initially, respondent, a voting body, was under no obligation to issue detailed findings of fact to demonstrate that it reviewed the fully developed administrative record before it, as petitioner would seem to urge (see generally Public Health Law § 3002 [3], [3-a]). Although petitioner may be correct that the record supports the determination reached by the Hearing Officer and the ALJ, each of whom recommended that petitioner's application be granted, "[a]s the agency responsible for making the final determination, [respondent] was not bound by [their] findings, conclusions and recommendations" (Matter of Tri-State Ambulance Serv. v State of N.Y. Dept. of Health, 114 AD2d at 548; see Public Health Law § 3002 [3-a]; New York State Department of Health, Bureau of Emergency Medical Services, Policy Statement No. 06-06 at 13-14 [May 26, 2006]; cf. Matter of Wiggins v Board of Educ. of City of N.Y., 60 NY2d 385, 388 [1983]; Matter of Rodriguez [Ollie's Bargain Outlet, Inc.-Commissioner of Labor], 185 AD3d 1111, 1112 [2020]; Matter of ELG Utica Alloys, Inc. v Department of Envtl. Conservation, 116 AD3d 1200, 1204 [2014], appeal dismissed 24 NY3d 929 [2014]). "In our view, the conflicting evidence in the record is sufficient to support either of the two opposing conclusions as to public need. In such circumstances, the choice of the agency responsible for making the final determination cannot be disturbed" (Matter of Tri-State Ambulance Serv. v State of N.Y. Dept. of Health, 114 AD2d at 548 [citations omitted]; see Matter of City of Utica v [*5]Daines, 95 AD3d 1467, 1470 [2012], revd on other grounds 21 NY3d 878 [2013]).
Lastly, we are not persuaded that Lewis' remarks reveal a conflict of interest. At the committee meeting, and then again before respondent, Lewis spoke on behalf of UNYAN, a not-for-profit membership corporation, reiterating positions already shared at the public hearing regarding issues with LogistiCare's communication and the notion that an excess of providers could have the adverse effect of causing existing EMS businesses to shutter, ultimately exacerbating any current shortfalls. As the parties agree, respondent's members are governed by Public Officers Law § 74 (2), which mandates that employees of state agencies must avoid "hav[ing] any interest, financial or otherwise, direct or indirect, or engage in any business or transaction or professional activity or incur any obligation of any nature, which is in substantial conflict with the proper discharge of [their] duties in the public interest" (see Public Officers Law § 74 [1]). That said, it was understood that Lewis' duty is to represent the interests of existing for-profit ambulance service providers in matters before respondent (see Public Health Law § 3002 [1]). In our view, that is exactly the role performed by Lewis here, and we agree with Supreme Court that there is no record evidence demonstrating that Lewis, who was but one vote in a clear majority opposing petitioner's application, had any personal interest in this matter (see e.g. Matter of Pittsford Canalside Props., LLC v Village of Pittsford, 137 AD3d 1566, 1567-1568 [2016], lv dismissed 27 NY3d 1080 [2016]; Matter of Eadie v Town Bd. of Town of N. Greenbush, 47 AD3d 1021, 1024 [2008]; Matter of Schupak v Zoning Bd. of Appeals of Town of Marbletown, 31 AD3d 1018, 1020-1021 [2006], lv dismissed and denied 8 NY3d 842 [2007]; Matter of Claffey v Commissioner of Educ., 142 AD2d 845, 846 [1988]). As the Legislature has sought fit to ensure that the interests of for-profit ambulance service providers are represented by respondent's full body,[FN4] it cannot be said that Lewis' remarks to that end were, on their own, evidence of a disqualifying conflict.[FN5] The fact that another of respondent's members, who was a prospective competitor of an applicant, may have elected to recuse himself from voting on some other application involving an entirely different set of facts does not change this result (see Matter of Tri-State Ambulance Serv. v State of N.Y. Dept. of Health, 114 AD2d at 547 n), or render respondent's determination a departure from prior precedent (compare Matter of O'Connor & Son's Home Improvement, LLC v Acevedo, 197 AD3d 1112, 1114 [2021]; Matter of Nicolai v McLaughlin, 163 AD3d 572, 574 [2018]; Matter of c/o Hamptons, LLC v Zoning Bd. of Appeals of Inc. Vil. of E. Hampton, 98 AD3d 738, 740 [2012]). Therefore, we find no basis upon which to disturb Supreme Court's dismissal of petitioner's application. Petitioner's remaining contentions, to [*6]the extent not expressly discussed herein, have been evaluated and determined to be without merit.
Egan Jr., J.P., Lynch, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Petitioner's appeal from the order upholding the denial of its application as it pertains to Suffolk County is also before us (Matter of North Shore Ambulance & Oxygen Serv. Inc. v New York State Emergency Med. Servs. Council, ___ AD3d ___ [2021] [appeal No. 532209, decided herewith]).

Footnote 2: Given that petitioner's application was prepared for and submitted to the REMSCOs for both Nassau and Suffolk Counties, certain aspects of its proof are for both counties jointly or Long Island as a whole.

Footnote 3: There is some evidence to suggest that a similar daily number of nonemergency transportation requests were not serviced before and after this period as well. As an objection to evidence of requests made following submission of the instant application was sustained, that evidence is not being considered.

Footnote 4: Respondent was created to improve the quality of EMS statewide (see Governor's Approval Mem, Bill Jacket, L 1974, ch 1053), and the Legislature's conscious choice to include a certain number of self-interested representatives in the composition of this final decision-making body is further illustrated by its decision to require representation of the for-profit ambulance service industry at the statewide level but not at the regional level (compare Public Health Law § 3002 [1], with Public Health Law § 3003 [2]). The Legislature also did not take the opportunity to correct any unintended consequence resulting from respondent's mandated composition when it twice amended the Public Health Law to address an inequity that did result from the statutory composition of REMSCOs (see generally Matter of City of Utica v Daines, 95 AD3d at 1468-1469).

Footnote 5: Petitioner has abandoned any argument concerning the dismissal of its related 42 USC § 1983 claim by failing to raise any issue in its brief with respect thereto (see Damphier v Brasmeister, 185 AD3d 1249, 1250 n 2 [2020]; State of New York v Konikov, 182 AD3d 750, 755 n 3 [2020], lv denied 36 NY3d 906 [2021]).