Matter of Broadway Stages, Ltd. v New York State Joint Commn. on Pub. Ethics (2022 NY Slip Op 00085)





Matter of Broadway Stages, Ltd. v New York State Joint Commn. on Pub. Ethics


2022 NY Slip Op 00085


Decided on January 6, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 6, 2022

531759
[*1]In the Matter of Broadway Stages, Ltd., Appellant,
v
New York State Joint Commission on Public Ethics, Respondent.

Calendar Date:November 16, 2021

Before:Garry, P.J., Egan Jr., Lynch, Pritzker and Colangelo, JJ.

Joshua L. Seifert PLLC, New York City (Joshua L. Seifert of counsel), for appellant.
Letitia James, Attorney General, Albany (Beezly J. Kiernan of counsel), for respondent.



Egan Jr., J.
Appeal from an order and judgment of the Supreme Court (Platkin, J.), entered July 9, 2020 in Albany County, which denied petitioner's application pursuant to CPLR 2304 to quash a subpoena duces tecum and to declare invalid certain regulations promulgated by respondent, and granted respondent's cross motion to compel compliance.
The Campaign for One New York, Inc. (hereinafter the Campaign) was created in 2013 with the alleged aim of advocating for the preferred policies of New York City Mayor Bill de Blasio in coordination with him. In 2015, respondent, the entity tasked with investigating and enforcing violations of various ethics and lobbying laws (see Executive Law § 94 [1]), began investigating whether the Campaign had violated provisions of Legislative Law article 1-a (hereinafter the Lobbying Act) by failing to register and report as a lobbyist. Respondent learned that the Campaign's donors included petitioner — a media production company in New York City that was a client of lobbying firm James Capalino and Associates (hereinafter Capalino) during the relevant period — and petitioner's president.
Capalino became the subject of an investigation by respondent into whether it had made gifts to a public official prohibited by the Lobbying Act, and ultimately acknowledged that it had organized contributions to the Campaign from petitioner and other clients. It further emerged that petitioner's president may have had meetings with the Mayor that fell within the definition of lobbying and, moreover, may have been solicited by the Mayor or his subordinates to contribute to the Campaign. Those developments prompted respondent to commence an investigation into whether petitioner had violated the Lobbying Act and implementing regulations by failing to comply with registration and disclosure requirements (see Legislative Law §§ 1-e, 1-h, 1-j) and by making prohibited gifts to public officials (see Legislative Law § 1-m; 19 NYCRR 934.3 [e]). In connection with that investigation, respondent served a subpoena duces tecum upon petitioner in 2019 that sought various records and communications relating to the interactions between petitioner, Capalino, the Campaign and/or the Mayor.
Petitioner refused to comply and commenced this combined declaratory action and special proceeding, arguing that the subpoena should be quashed and seeking a declaration that respondent improperly expanded the statutory prohibition on gifts by adopting regulatory language that barred a lobbyist or client from offering or giving a gift to a third party on behalf of a public official. Respondent served an answer and cross-moved to compel petitioner to comply with the subpoena. Supreme Court denied the petition/complaint and granted the cross motion, prompting this appeal by petitioner.
We affirm. "An agency may issue a subpoena duces tecum so long it has the proper authority and a sufficient factual basis for its investigation and the evidence sought is reasonably [*2]related to the subject of the inquiry" (Matter of New York State Senate Republican Campaign Comm. v Sugarman, 165 AD3d 1536, 1538 [2018] [citations omitted]; see Matter of A'Hearn v Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn., 23 NY2d 916, 918 [1969], cert denied 395 US 959 [1969]). A subpoena should only be quashed "where the futility of the process to uncover anything legitimate is inevitable or obvious or where the information sought is utterly irrelevant to any proper inquiry," and the burden rests on the challenging party to make that showing (Anheuser-Busch, Inc. v Abrams, 71 NY2d 327, 331-332 [1988] [internal quotation marks, brackets and citations omitted]; accord Matter of New York State Senate Republican Campaign Comm. v Sugarman, 165 AD3d at 1538; Matter of Hogan v Cuomo, 67 AD3d 1144, 1145 [2009]).
Respondent is empowered to issue subpoenas in order to investigate violations of the Lobbying Act (see Executive Law § 94 [1], [13] [a]; [17] [c]), and it set forth in detail why it believed the subpoena here could uncover evidence of those violations. Petitioner essentially argues that respondent bases that belief upon its own impermissible expansion of the definition of a gift in the Lobbying Act to encompass contributions to a third party such as the Campaign and that, as a result, respondent lacked authority to investigate those contributions.[FN1] It is true that respondent's regulations prohibit lobbyists and their clients from transferring anything of more than nominal value "to a third party . . . at the designation or recommendation of a [p]ublic [o]fficial (or a [p]ublic [o]fficial's spouse or unemancipated child), when such . . . cannot be offered or given to such [p]ublic [o]fficial" (9 NYCRR 934.3 [e] [2]), as well as that the Lobbying Act does not specifically mention that conduct in its definition of a gift (see Legislative Law § 1-c [j]). The Lobbying Act does, however, broadly define a "gift" as "anything of more than nominal value given to a public official in any form" (Legislative Law § 1-c [j] [emphasis added]). The statutory definition goes on to cite examples of gifts that obviously contemplate payments made to third parties for the public official's benefit, such as those for services, lodging, meals and refreshments (see Legislative Law § 1-c [j]). We afford that unambiguous language its plain meaning (see People ex rel. Negron v Superintendent, Woodbourne Corr. Facility, 36 NY3d 32, 36 [2020]; Matter of Spence v State Univ. of N.Y., 195 AD3d 1270, 1273 [2021]) and, notwithstanding petitioner's strained efforts to argue otherwise, have no difficulty concluding that a payment or other transfer of value to a public official that is made to a third party may fall within the statutory definition of a gift and be prohibited if the surrounding circumstances permit the reasonable inference "that [such] was intended to influence [the] public official" (Legislative Law § 1-m).
Although the plain [*3]meaning of the statutory language "render[s] it unnecessary to consider the legislative history, here it lends further support to our construction" (Nadkos, Inc. v Preferred Contrs. Ins. Co. Risk Retention Group LLC, 34 NY3d 1, 10-11 [2019]; see Kimmel v State of New York, 29 NY3d 386, 397 [2017]). Indeed, a stated goal of the Legislature in adopting the current versions of Legislative Law §§ 1-c (j) and 1-m was to strengthen the standards for gifts to public officials by "prohibit[ing] a public official from permitting a third party to receive, accept or solicit a gift from a lobbyist under circumstances where it is reasonable to infer the gift was intended to influence the official" (Governor's Program Bill Mem No. 2, Bill Jacket, L 2007, ch 14 at 10). Respondent's adoption of regulations that construe the statutory definition of "gift" in that manner was therefore valid because they were "consistent with [their] enabling legislation and . . . not so lacking in reason for [their] promulgation that [they are] essentially arbitrary" (Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals Tax Appeals Trib., 2 NY3d 249, 254 [2004]; see Matter of Sugarman v New York State Bd. of Elections, 190 AD3d 1228, 1231 [2021]). It follows that, because respondent had "'authority, relevancy, and some basis for inquisitorial action'" in issuing the subpoena, Supreme Court correctly declined to quash the subpoena and directed petitioner to comply with it (Matter of Hogan v Cuomo, 67 AD3d at 1147, quoting Matter of A'Hearn v Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn., 23 NY2d at 918).
Garry, P.J., Lynch, Pritzker and Colangelo, JJ., concur.
ORDERED that the order and judgment is affirmed, without costs.



Footnotes

Footnote 1: Petitioner notably makes no effort to challenge the separate basis for the subpoena articulated by respondent, which was to seek out information relevant to whether petitioner had violated the registration and disclosure requirements of the Lobbying Act.